# Penn Iron Co. Limited, *versus* Diller.

1. A. leased to B. a foundry building, yard, the joint use of a pattern shop and an engine room for $500 per year. In a subsequent clause of the lease it was provided that B. should pay fifteen cents per hour for steam furnished to his engine by A., A. to have the use of the power of the engine without charge. A. failed to furnish steam to B. In an action of covenant by B. against A. for this alleged breach, *Held* that there was no covenant by A. to furnish steam, nor by B. to use it.

2. The measure of damage for the breach of a covenant in a lease is the actual damage which resulted from the actual breach, and not the value of the lease.

May 18th, 1886. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ. TRUNKEY, J., absent.

[Penn Iron Co. Limited, *v.* Diller.]

ERROR to the Court of Common Pleas of *Lancaster county :* Of January Term 1886, No. 408.

This was an action of covenant brought by Franklin Diller for the use of Rosanna Stehman, against the Penn Iron Co. Limited. Pleas, covenants performed *absque hoc.*

The action was brought on a lease. the portions of which that are material to this action are as follows :

This indenture made the     day of July, A. D. 1880, between the Penn Iron Company, (Limited), of Lancaster, Pa., of the one part, and Franklin Diller of the other part, witnesseth. that the said party of the first part doth by these presents, lease and let unto the said party of the second part, all that part of the premises of said company on Plum street, Lancaster, and the Pennsylvania Railroad, known as the foundry building, space in the yard for necessary stock and materials, the joint use of the pattern shop with the first party hereto, the engine room adjoining the foundry. To have and to hold the premises aforesaid unto the lessee from the 15th day of May, 1880, for the term of one year then next ensuing, he yielding and paying for the same unto the said lessor or its assigns, the rent or sum of five hundred dollars, payable monthly.

It is further agreed, that the second party hereto shall pay fifteen cents per hour for the steam furnished to his engine by the first party hereto, and he shall have the right to use the tools in the pattern shop; but in consideration therefor, the first party hereto shall have the use without charge, of the power of the engine of the second party whenever they shall require it in the pattern shop.

The breaches alleged in the *narr* were—

1. In not furnishing plaintiff, for the agreed price, with the steam needed in carrying on his foundry business.

2. In depriving him of the joint use of the pattern shop, or the tools in the same, by removing such necessary tools from said shop—dismantling the same of its machinery, by which its use as a pattern shop was practically destroyed.

On the trial the following evidence on part of the plaintiff was admitted, under objection, and exception, of the defendant, the admission of which is assigned as the first, second and third assignments of error.

1. *Q.* What was the value of that branch of your lease—meaning the pattern shop—for the term you were there ?

*A.* A low estimate would be about $600.

2. *Q.* Have you any idea of the value of the loss of the pattern shop ?

*A.* From the amount of work that might have been done in the shop, I think the estimate of $600 is exceedingly low.

3. *Q.* What was the value of Mr. Diller's lease of the pattern shop—which was the joint use pattern shop—during the time of use, for the period of one year and five months; what is the value of that as a lease, in your judgment?

*Q.* I mean his lease?

*A.* It would be worth all the way from $700 to $1000 for the year and five months, that is, well equipped with the machinery that was in there, that I saw there.

The Court rejected the following evidence on part of the defendant under objection, of the plaintiffs, which is assigned as the fourth, fifth, seventh and eighth assignments of error.

4. *Q.* Could the company, while they were conducting their own business, and had that means of generating steam, as you have stated, furnish steam for the price of fifteen cents an hour in any specific quantity, to any other person?

5. We, the defendant's counsel, propose to show that Mr. Diller understood the situation of the rolling mill, the boilers and the steam, and all about it, and that the company understood the same; and with all these matters in view and with a desire to accommodate Mr. Diller with the use of the foundry, which had been fixed up a short time before with the intention of renting it, with the desire of having a foundry there, and with the desire of furnishing Mr. Diller with an opportunity to try the experiment of running the foundry, this arrangment (the agreement) was made.

7. *Q.* Did he ever ask that the tools should be replaced, that were removed?

*Q.* Did Mr. Diller ever do any work with the tools in the pattern shop when all the tools were there?

*Q.* Up to the time when the first tool was removed, in November, did Mr. Diller do any work in the pattern shop; any work on the tools in the pattern shop?

8. We propose to prove by this witness (W. B. Middleton) and other witnesses, that the plaintiff suffered no damages by reason of any breach of covenant, if there was a breach made by the defendants.

The Court, PATTERSON, J., instructed the jury, *inter alia*, as follows:

The declaration charges the company with the following non-performance, or breaches of its covenants:

1. That the company did not furnish the plaintiff, Diller, sufficient steam to do the business of the foundry.

2. That the company failed to furnish or afford the said plaintiff, Diller, the use of the tools in the pattern shop, but removed them, or some of them, out of the shop, by dismantling said shop of shafting, and belting and pulleys.

Now, those alleged breaches are the matters you are trying —the breaches in the lease of "July, 1880."

You cannot entertain in your deliberations any other matters pertaining to this contract of lease, or consider any evidence, that has been submitted to you, that does not bear on the inquiries.   What are the breaches alleged—have they been proven to your satisfaction—what damages, if any, have been proven that the plaintiff has sustained—what damages in dollars and cents?   [For in this action the judgment is damages for all, or any one of the breaches averred in the complaint of the plaintiff, and which the jury do find, from all the evidence in this case, have been proven.]   (Ninth assignment of error.)

[The first breach alleged is, as you will remember, was, that the company did not furnish the necessary amount of steam required for his, the said Diller's, engine, in carrying on his business—the foundry business, and by that means he suffered damages and losses.

Is that a breach or failure proven?   If so, and if damages by reason of that failure have been shown to your satisfaction, you will allow the damages accordingly.]   (Tenth assignment of error.)

[The other breach alleged is, that the company deprived the plaintiff of the use of the tools, or some of them, in the pattern shop, by removing machinery—the shafting and belting—and that he, the plaintiff, thereby suffered loss or damages.   Now this alleged breach you will consider distinct from any other, and find and determine if the breach is proven, and will then find and determine if damages in consequence have been shown, and how much, if any.

The amount of damages is for the jury, under the evidence in the case; it is exclusively for the jury, under the law and the evidence.]   (Eleventh assignment of error.)

[Now, in conclusion, if the jury believe, from the evidence, that the breaches charged of a violation of the written agreement, have been made out, and if alleged damages to the plaintiff have been proven to your satisfaction—damages resulting from such breaches, then your verdict should be for the plaintiff, Diller, for such damages in dollars and cents; the amount of damages is for the jury.]   (Twelfth assignment of error.)

The plaintiff presented, *inter alia*, the following point:

1. The reasonable meaning of the clause in the lease made by the parties, viz.: "That the second party hereto," Frank Diller, "shall pay fifteen cents per hour for the steam furnished to his engine by the first party hereto," (Penn Iron Company, Limited), is that the steam just furnished by

[Penn Iron Co. Limited, *v.* Diller.]

defendants and paid for by plaintiff at the rate stipulated, was to be in such sufficient quantity, and at such reasonable times, as would enable Mr. Diller to do the work of the foundry up to its ordinary or reasonable capacity.

Answer. Affirmed. (Thirteenth assignment of error.)

The defendant presented, *inter alia*, the following points:

1. There is no provision in the agreement between the parties in the suit, that binds the defendants to furnish the plaintiff with all the necessary steam required for his engine to carry on his business.

Answer. Negatived. (Fourteenth assignment of error.)

2. The agreement provides that Mr. Diller shall pay to the company fifteen cents per hour for steam furnished to his engine by the company. If they furnished Mr. Diller with steam, and he paid them at the rate of fifteen cents per hour, there is no breach by the company of that part of the agreement.

Answer. We affirm this point with this modification, viz.: provided it is to be understood by the paragraph: "If they furnished Mr. Diller with steam and he paid them for the same at the rate of fifteen cents per hour," is to be understood, if they, the company, furnished Mr. Diller sufficient steam for his engine to carry on his business—his foundry business. (Fifteenth assignment of error.)

4. This clause of the agreement (in reference to use of tools in pattern shop and use of engine) is independent of the general provision thereof, and the only consideration wherein he was to pay for the use of the tools in the pattern shop was his furnishing the company with engine power. If, therefore, the jury believe that Mr. Diller cut off the steam of the company's boilers from his engine, and did not furnish engine power to company when they required it in the pattern shop, he cannot recover any damages on account of the removal of the tools.

Answer. The Court declines to affirm this as a legal proposition. (Sixteenth assignment of error.)

7. There is no evidence on which the plaintiff can recover damages for the loss of the use of the tools in the pattern shops—if he did lose such use—except the one and a half day's work on the Myers contract.

Answer. The jury's province is to hear and decide whether there is not evidence on which the plaintiff can recover damages for the loss of the use of the tools in the pattern shop. (Seventeenth assignment of error.)

Verdict in favor of the plaintiff, and damages assessed at $750, and judgment thereon, whereupon the defendant took this writ and filed the assignments of error above shown.

*A. J. Steinman* (*D. G. Eshleman* with him), for plaintiff in

error.—1. The acts and conduct of Mr. Diller, as well as of the company, show very clearly that it was the intention of the parties when the agreement was made, that Mr. Diller should try the experiment of running his foundry with the waste steam of the company, and that he should pay at the rate of fifteen cents per hour for the same. The inducement to Mr. Diller to try the experiment being the cheapness of the steam and its conveniences.

Dr. Wharton, 2 Whar. Evi., § 941, says : "In all cases the acts of the parties are received to give their common interpretation of ambiguous words."

WOODWARD, J., in Lehigh Coal and Nav. Co. v. Harlan, 3 Casey, 439, says : "Covenants, like all other contracts, are to be construed according to the intentions of the parties as nearly as the words will permit; and there is no surer guide to the understanding and intentions of the parties, when words are equivocal, than their acts and declarations under the agreement, called commonly its contemporaneous construction." ·

To recover damages for the loss of profits resulting from the breach of a contract, the plaintiff must prove not only that he had been prevented from performing it by default of the defendant, but also that he has sustained actual loss thereby : Lentz *et al.* v. Choteau, 6 Wr., 435, 438 ; McKnight v. Ratcliffe, 8 Wr., 155, 169 ; Haak v. Wise, 2 W. N. C., 689 ; Sedgwick on Damages, 78.

*William R. Wilson,* for defendant in error.—The acts and conduct of the parties show very clearly that it was the intention of the parties when the lease was made, that the party of the first part should furnish the party of the second part with steam : Watson v. O'Hern, 6 Watts, 362 ; Koch's & Balliott's Appeal, 12 Norris, 434 ; Moore v. Miller, 8 Barr, 272 ; Hazleton Coal Co. v. Buck Mountain Coal Co., 7 P. F. S., 301.

Covenants to furnish the needed steam, we contend, is implied from agreement to pay for same. See Implied Covenants, 2 Whar. on Cont., § 663.

We were entitled to recover the actual damages sustained by reason of the failure of the defendant to furnish steam : Billmyer, Dill & Co. v. Wagner, 10 Norris, 92 ; Vanderslice v. City of Philadelphia, 7 Out., 102 ; Erie & Pittsburgh Railroad Co. v. Douthet, 7 Norris, 243 ; Hoy v. Gronoble, 10 Casey, 9 : Fiegel v. Latsur, 32 P. F. S., 448 ; 3 Parsons on Contracts, 5th edition, notes, 230 ; Dexter v. Manby, 4 Cushing, 21–25 ; Garsed v. Turner *et al.*, 21 P. F. S., 56.

Mr. Justice GREEN delivered the opinion of the Court, October 4th, 1886.

We are quite unable to agree with the learned court below in the interpretation they gave to the written contract of the parties. There was no agreement by the defendant to furnish any steam whatever to the plaintiff, and there was no leasing of any property or granting of any privilege which makes it necessary for the law to imply a contract by the defendant to furnish steam enough to the plaintiff to enable him to carry on the work of the foundry up to its ordinary capacity. The things leased to the plaintiff are, (1), certain premises known as the foundry building; (2), yard space for necessary stock and materials; (3), the joint use of the pattern shop; and (4), the engine room adjoining the foundry. There is certainly nothing here to indicate any obligation by the lessor to furnish any steam to the lessee for any purpose. Ordinarily, a foundry building and an engine room, contain their own motive power; and if they do not, such an extraordinary omission, if it is intended that the lessor shall supply the power, would be provided for by express terms in the lease. But certainly there is no implication in the mere lease of a foundry building, that the lessor shall furnish the steam to run it. In the lease, next after the subjects of the demise are defined, follows the complete obligation of the lessee to pay the lessor $500 rent for one year, payable monthly. The rent, therefore, was to be paid as the consideration of the things demised, and these did not include any steam, either expressly or by implication.

Then another term is added to the contract, by which it is provided that the lessee "shall pay fifteen cents per hour for the steam furnished to his engine" by the lessor, "and he shall have the right to use the tools in the pattern shop; but in consideration therefor," the lessor, " shall have the use without charge of the power of the engine" of the lessee whenever they shall require it in the pattern shop. The plain and obvious meaning of these words is, that for whatever steam may be furnished by the lessor to the lessee's engine, the lessee shall pay fifteen cents an hour; but the lessor does not agree to furnish any steam, and the lessee does not agree to take any. But if steam is actually furnished to the engine, which means necessarily also if it is used, the lessee agrees that he will pay fifteen cents an hour for it. If the furnishing of steam by the lessor was a necessary incident to his lease of the premises, there would be an implied obligation to furnish it, and the case would be parallel to Watson v. O'Hern, and Koch and Ballist's Appeal and the kindred cases. But it is too manifest to require discussion, that there is no such implied obligation. This being the case, where the lessee simply agrees to pay for steam furnished without requiring the lessor to furnish any,

3 AMERMAN—41

and without the lessor agreeing to furnish any, there is no other obligation than that which appears in the words employed.   When the owner of a stone quarry or an ore mine leases his premises to one who is to pay a fixed price per ton for all stone or ore taken out, the very purpose of the lease is that stone or ore shall be taken out, and hence there is an implied obligation to do so.   But that obligation arises from a consideration of the necessary object and purpose of the contract.   Without it the contract is a practical nullity.   But no such situation arises out of the contract we are considering, and hence no obligation larger than its terms impose, arises from it.  ·These views require us to sustain, as we do, the 4th, 5th, 10th, 13th, 14th and 15th assignments of error.

We sustain the 1st, 2d and 3d, because the value of the lease, or any part of it, is not the measure of the damages to which the plaintiff is entitled for a breach of a particular covenant contained in it.   If such a covenant was broken, the actual damage which resulted from the actual breach, can be and should be shown.   To ask what was the value of the lease, lets in the wildest and most speculative conjectures, which the friendly zeal of the party's witness may choose to indulge in.   If there was an injury done, let the witness state what it was, and how it was done; and if he can express the value of that particular injury in figures, let him do so.

We think the questions covered by the seventh and eighth assignments should have been allowed, as they bear directly upon the allegation of damages from loss of the use of the tools, and that subject being an open one, presented by the plaintiff, the defendant was as much entitled to give evidence in reply as the plaintiff was, in support of it.

We do not sustain the ninth assignment, as it is only a general statement of the law applicable to any finding of damages, and we see no objection to it.   The same is true of the twelfth assignment.

The sixteenth and seventeenth assignments are not sustained.

> Judgment reversed, and *venire de novo* awarded.