Kast et al., Appellants, *v.* Jackson & Moyer, Inc.

172

Argued March 11, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Walter Schachtel*, of *Einhorn & Schachtel*, for appellants.

*Abraham L. Freedman*, with him *Philip Werner Amram*, of *Wolf, Block, Schorr & Solis-Cohen*, for appellee.

OPINION BY STADTFELD, J., July 27, 1942: ·

The essential facts are not in dispute and are set forth in the opinion of the court below by JONES, J. from which we quote as follows: "The action is one in assumpsit based upon a written contract. It was tried without a jury by agreement of the parties. The court found for the defendant, whereupon the plaintiffs filed a motion for a new trial and a motion for judgment non obstante veredicto. After oral argument had and written briefs filed the motions were dismissed.

"The defendant by a written contract made and dated '10/24/35' engaged the services of the plaintiffs for the purpose of analyzing its then 'present' contracts and methods of purchasing electricity 'to ascertain if any monthly saving can be effected, if possible.' The plaintiffs were to make a report of such analysis in detailed form, such report to set forth clearly the Utility's Tariff upon which any savings might be effected and/or upon which any recommendations of the plaintiffs were based. In consideration of such services the defendant agreed to pay the plaintiffs the sum of 40% of any savings that might be effected through the analysis or the recommendations. The payment of such commission for such services was to begin from the first month's savings when actually effected and was to continue for twelve consecutive months thereafter. The commissions were to be due and payable monthly. The defendant also agreed that in consideration for the services 40% would also be paid upon any adjustments procured upon past and paid invoices. It was understood that if the analysis proved that no savings could be effected, then the defendant was not obligated to pay anything other than the minimum charge specified in the contract. This minimum charge was to cover any tests that might be necessary in analyzing the account and any labor that might be necessitated by reason of the analysis and inspections.

The minimum charge was paid at the time of the execution of the contract.

"This agreement entitled 'Electric Rate Analysis contract No. 1090' is a printed form. It was presented to the defendant's treasurer by a solicitor and agent of the plaintiffs. A copy of this agreement in such form is attached to the Statement of Claim showing its size, form and content. There was printed at the bottom of the contract the following language: 'This agreement constitutes the entire contract between the parties and there are no understandings, verbal promises or representations of any kind different from the same.'

"This action which was in assumpsit was brought by the plaintiffs to recover savings effected during the period of twelve months beginning March 1938, the plaintiffs alleged, by reason of the alleged adoption and application by the defendant of their recommendation. No dispute was involved as to the amount of the savings or as to the period of time for which savings were effected. It was stipulated by counsel for the parties that, if there were any liability on the part of the defendant under the contract the amount of such liability was the net sum of $532.52.

"The defendant denied such and any liability under the contract, denied that the services averred to have been rendered to it had been rendered, contending therefore that there was no liability to plaintiffs.

"The defendant did change its method of purchasing electricity subsequent to the date of the execution of the contract and did adopt and apply a method which was similar to the recommendation of the plaintiffs. The defendant, however, contended that the method which was adopted and applied was not the recommendation of the plaintiffs, that it was a method which had been recommended to it prior to the execution of the contract with the plaintiffs, that such method had been recommended to it by other electrical experts, that it

had not adopted and applied such methods before the execution of the contract with the plaintiffs and at a date earlier than that upon which it did by reason of the expense involved and its financial condition. The defendant contended that the method which was adopted and applied was made known to the soliciting agent of the plaintiffs, that it was distinctly understood that such method was not to be embraced within the contract and was not to constitute a recommendation such as the plaintiffs contracted to furnish to the defendant. The defendant contended further that the purpose of the analysis of their method of purchasing electricity at the time of the execution of the contract was to the end that it might receive recommendations from the plaintiffs to effectuate a saving, if possible, in the cost of the electric service other than that then known to the defendant. It was contended further by the defendant that the soliciting agent of the plaintiffs stated to its treasurer who executed the contract on its behalf that the plaintiffs were experts and that they might be able to discover other means and other methods than that which the defendant outlined to him. Such were the circumstances surrounding the execution of the contract to which the words of the instrument were intended and understood to apply."

The court below found as follows: (a) The plaintiffs could not possibly recover from the defendant for merely telling the defendant what the defendant already knew and had told the plaintiffs that it knew; (b) Irrespective of any parol evidence, the written contract must be construed to require the plaintiffs to submit a novel and original method of electrical savings; (c) If the contract is not so construed then it is clearly ambiguous, and parol evidence may be introduced with respect to the situation of the parties and the meaning which they ascribed to the word "recommendations" in the agreement; (d) The recommendations of the plaintiffs were

not novel or original, but were merely a repetition of prior suggestions received from others and disclosed by the defendant itself to the plaintiffs; (e) The work done by the defendant was not done in pursuance of the recommendations of the plaintiffs, but in pursuance of the previous proposals of the Independent Wiring Company.

As stated by the court below in its opinion: "There is no necessity to review in detail the testimony of each of the witnesses presented by the defendant. It was full, explicit. Their testimony was in detail as to the time and circumstances under which they made an examination of the defendant's situation, as to the changes to be made and the equipment required to effect a saving in the purchase of electricity. It was clear that that which the plaintiffs in the instant case recommended was precisely similar in method and purpose to that which had been recommended by technicians and experts other than the plaintiffs and, of course, was known by the defendant.

"The questions present themselves: (1) Did the defendant make known to the plaintiffs' agent before the execution of the contract the fact that the method of saving such as the plaintiffs subsequently recommended to the defendant had been ascertained and recommended to the defendant theretofore by others and was it in the light of such fact and under such circumstances that the contract was executed? (2) Did the contract contemplate the future, the ascertainment of a new method, a method not known to the parties at the time of its execution and was it for the ascertainment of a method other than that which had been ascertained prior thereto for which the services of the plaintiffs were engaged? The answer to question No. '(1)' was given in the affirmative by the finding of the court. Question No. '(2)' was given an affirmative answer not

only by the language of the contract itself but also by the finding of the court."

The real question involved in this case is whether the plaintiffs are entitled to be paid compensation by the defendant for telling the defendant something which the defendant already knew and which the defendant itself disclosed to the plaintiffs.

Mr. Steinman, Treasurer of defendant company, in relating his discussions with Mr. Bourcier, the plaintiffs' solicitor, testified: "A. Well, I told him that we would not consider the suggestion that had been made to us by others as their recommendation. Q. What was that; did you tell him what that was? A. Yes. Q. What did you tell him? A. *I told Mr. Bourcier I had been talking to innumerable companies,* other electrical contractors, *who had suggested installing transformers to effect a saving* by using the rate known as P. D. instead of .W. and P., and *we knew that we could save money by adopting the P..D. rate but it meant installing transformers* and we felt that we were not then in a position to make the investment. *I told him that specifically."*

The plaintiffs then proceeded to submit a suggestion for savings which contained absolutely nothing but a repetition of the suggestion that they install transformers and convert from low-tension to high-tension current.

Appellants do not dispute any of the findings of fact by the court below sitting as a trier of the facts.

The court below, however, construed the contract in question to require the plaintiffs to discover and suggest a new or novel method of savings to the defendant's electrical purchasing cost, if they wanted to be paid for their work.

The court below in a very able and comprehensive opinion analyzed the contract in the following language: "Observe that the plaintiffs' services are engaged 'for the purpose of analyzing' the defendant's 'present con-

tract and/or methods of purchasing electricity.' To what end? The contract declares it, to wit, 'to ascertain if any monthly savings can be effected, if possible.' *Indubitably this language looks to the future, to the unknown.* What does 'ascertain' mean? It means 'to get to know', to learn, to acquire knowledge of the then unknown. What does 'if possible' mean? It means if within the powers of performance, attainment. *This is language looking to the future, it bespeaks a search for the unknown.* Unmistakably the plaintiffs were to make their analysis for the purpose of ascertaining whether or not future savings could be effected by a method to be discovered 'if possible' from such examination; and having ascertained 'such method, the plaintiffs engaged to make a report of the analysis in detailed form and to 'set forth clearly the Utility's Tariff upon which any savings may be effected and or upon which any recommendations are so based'. *Manifestly the language does not constitute a contract to make an analysis to ascertain the known method of saving."* (Italics supplied)

The contract when examined in its entirety clearly necessitates the submission of a novel and original proposal by the plaintiffs which admittedly was not done. Appellant in its brief apparently depends on the term "recommendation" in the contract independently of whether it be new or novel or whether such "recommendation" had primarily been submitted by other persons to the defendant.

In the case of *Denniston v. Schaal,* 5 Pa. Superior Ct. 632, the question arose with reference to the meaning of the word, "account", as used in a written instrument. In the opinion of the court delivered by President Judge RICE it was said: "It is an elementary principle in the law of evidence for which no authority need be cited, that parol evidence is admissible to explain a written agreement, so far as *to give identity to the subject-*

*matter and apply the contract to it.* This principle is applicable here. It justified the defendant in setting forth the circumstances under which the paper was given, not for the purpose of contradicting or varying the terms of the written contract, but to explain it by identifying the account to which it refers." (Italics supplied).

In concluding his opinion Judge RICE said, inter alia, "But these general principles are well established; that the instrument is to be construed according to what is fairly to be presumed to have been the understanding and intention of the parties, without any strict technical nicety; that the language should not be strained beyond its natural import for the purpose of enlarging the guarantor's liability; and *that in ascertaining what was the understanding of the parties the circumstances accompanying the whole transaction are to be looked to: ......*" (Italics supplied).

Quoting from the opinion of the court below: "Neither the language of the contract nor any evidence of plaintiffs or defendant presents the view that the plaintiffs contracted to give expert opinion upon any methods of saving which were known to the defendant prior to or at the time of the execution of the contract. Neither the contract nor the evidence nor the contention of the plaintiffs presents the view that the defendant did submit or was expected or was obligated to submit plans or methods of savings, of which it, the defendant, had prior knowledge, for the critical examination and expert opinion of the plaintiffs before adoption and application by the defendant. The contract itself, as pointed out declares that the method of saving is to be ascertained, 'if possible', by the plaintiffs as a result of the plaintiffs' examination of records, accounts, equipment and the service then rendered by the electric company to the defendant. The plaintiffs were 'to ascertain', 'if possible', some method of saving then unknown to

the defendant and to be discovered and made known to the defendant by the plaintiffs. Such method of saving if ascertained by the plaintiffs is to be submitted to the defendant and constitutes the recommendation contemplated by the contract.

"If now, as the defendant's evidence discloses, the recommendation of a method for saving tendered by the plaintiffs was known by the defendant before the execution of the contract and was made known to the plaintiffs' agent before its execution, such method was not within the scope and object of the contract. This conclusion is in conformity with the language of the instrument. It was a method known to the parties at such time and could in no sense be ascertained by the plaintiffs by their subsequent examinations and analysis. It was a method already ascertained."

To all of the evidence submitted by the defendants, plaintiffs objected upon the ground that it was extrinsic evidence in violation of the parol evidence rule, that it was therefore not admissible and therefore not relevant to the determination of the issue.

We believe the court below in its opinion correctly answers this objection. We quote therefrom: "The evidence presented by the defendant in this case does not violate this rule of evidence. It bears upon the questions as to whether or not the plaintiffs rendered the service they were engaged to render and whether or not the consideration stipulated to be paid by the defendant was owing. It relates to the subject-matter of the contract, not its terms. The evidence does not contradict, add to or subtract from, vary or alter the terms of the written instrument."

Quoting from *Barnhart v. Riddle,* 29 Pa. 92, 96, 97: "But evidence to explain the *subject-matter* of an agreement, is essentially different from that which varies the terms in which the contract is conceived. It is the dictate of common sense, and therefore a rule of law,

that every written instrument is to be interpreted according to the subject-matter, and yet the nature and qualities of the subject-matter are seldom fully stated, often only alluded to in the writing. Thus in the agreement on which this action is founded, Riddle binds himself to pay Barnhart's share of the *'demands'* against him as a member of the firm of M. Riddle & Co., but there is no specification of the demands, either as to character or amount. Now in this case, as in many others, it is obvious we must resort to parol evidence in explanation of the scope and object of the agreement, if we would cause it to have the effect the parties intended it should have.

" 'Demands:' what demands, how many, and to what amount? Parol evidence, or proof outside of the agreement, can alone inform the judicial conscience. But if the evidence shows, that the parties contracted with a schedule of demands before them, it is reasonable to infer that they meant the covenant to pay should be construed in reference to that schedule; that their agreement, indeed, was based upon the prepared statement."

It is an undoubted rule of law that where parties have deliberately put their engagements in writing and no ambiguity arises out of the terms employed, it is not permissible to contradict, vary or add to the language used to express their intention in the absence of fraud, accident or mistake. Where, however, a dispute as to the subject-matter of a contract arises, parol evidence may be admitted to identify the thing with respect to which the negotiation took place. Written agreements are to be construed according to the nature and condition of the subject-matter and the position of the parties.

The assignments of error are overruled and judgment affirmed.