Ruck, Appellant, *v.* Vassalotti.

Argued October 13, 1942. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT and KENWORTHEY, JJ. (STADTFELD, J., absent).

*Edwin A. J. Blank,* for appellant.

*Martin Silvert,* for appellee.

OPINION BY RHODES, J., April 16, 1943:

This is an action in assumpsit in which plaintiff seeks to recover damages alleged to have been suffered by him because of defendant's breach of a written contract of employment. The case was tried in the municipal court before a judge without a jury, who found for plaintiff in the amount defendant admitted to be due plaintiff. Plaintiff's motions for a new trial and for judgment notwithstanding the finding were dismissed, and he took this appeal.

The written contract is as follows:

"AGREEMENT OF SALE

Nickolas Vassalotti

vs.

Andrew F. Ruck and Conrad Schneider.

Mr. Vassalotti agrees to buy the stock and fixtures at 501 Solly Avenue from Ruck and Schneider as follows:

$1000. for the fixtures. To be paid at once.

Stock to be taken at inventory. To be paid for when taken.

Mr. Vassalotti to engage Mr. Ruck to work in the new store at $40. per week for six months at least. Both persons to use their best efforts to build up a large business to be known as 'JEANNES FOOD MARKET.' Each party, Mr. Ruck and Mr. Vassalotti, agree to put up $500. to be held by C. Grant Lucas for six months as a bond that all agreements be maintained. Either party breaking the agreement within six months will forfeit the $500. to the other.

Mr. C. Grant Lucas alone to make this decision.

Signed,

Andrew F. Ruck,
Conrad Schneider                                    Nicholas Vassalotti
Witnessed by: C. G. Lucas.
Dated      March 14/38."

The arbitration clause was mutually dispensed with by the parties whose counsel stipulated that the case should be tried by a judge without a jury as if no provision for arbitration had been made. It was also admitted that neither party posted $500 with Mr. Lucas, although they disagreed as to the reason for their failure to do so.

One phase of the controversy relates to whether appellee's engagement to employ appellant for at least six months at a salary of $40 per week was based upon the amount of business which appellee would do. Appellee's defense, as reflected by his testimony, was that he entered into the agreement of hiring by reason of appellant's verbal representations that he had been doing a business of $700 or $800 per week; that appellant would bring all this business from his store across the street to appellee; that with appellee's money the business would be more than $700 or $800 per week. For the first three weeks of its operation by appellee the store did a business only slightly in excess of $400 per week. At this point, because of appellant's failure to produce the business, appellee informed appellant that he could not afford to pay the latter $40 per week, and

offered him $25 for a half week; that for two weeks thereafter appellant worked three and one-half days each week, but refused to accept the $50 which appellee tendered him; and that appellant never worked for appellee thereafter, although appellee had not discharged him.

Appellant's position is that the written agreement is a complete legal obligation, and that it may not be altered by parol evidence in the absence of fraud, accident, or mistake. With the contention that the written agreement is a complete legal obligation we do not agree. On the contrary, it is manifestly indefinite and incomplete, and the parol evidence rule has no application here. It is seldom that contracts of this kind are completely expressed in writing. *Thompson v. Emerald Oil Co.*, 279 Pa. 321, 329, 123 A. 810. The nature of the agreements to be maintained, for the fulfillment of which each was to post $500 for six months, does not appear therein. To establish this, parol evidence was admissible, not for the purpose of contradicting the terms of the written contract, but to explain it by identifying the agreements to which it refers, and to establish the terms of a contract partly written and partly oral. See *Bole v. Alden Park Manor*, 98 Pa. Superior Ct. 65, 68, 69; *Kast et al. v. Jackson & Moyer, Inc.*, 150 Pa. Superior Ct. 171, 178, 180, 181, 27 A. 2d 662; *Denniston et al. v. Schaal*, 5 Pa. Superior Ct. 632, 635. As said in *Bryant v. Bryant et al.*, 295 Pa. 146, 153, 144 A. 904, where a writing does not fully state the agreement between the parties upon any given point, the written provisions in regard thereto may be explained or supplemented, and the true state of facts established by parol evidence. See, also, *Cridge's Estate*, 289 Pa. 331, 338, 137 A. 455; *Kerr v. McClure*, 266 Pa. 103, 105, 109 A. 600; *Federal Sales Co. of Philadelphia v. Farrell*, 264 Pa. 149, 154, 107 A. 668. Appellant's commitment was a virtual guaranty of $700 or $800 business per week by appellee.

In *Gianni v. R. Russell & Co., Inc.*, 281 Pa. 320, at pages 323, 324, 126 A. 791, at page 792, in an opinion by Mr. Justice, later Chief Justice, SCHAFFER, our Supreme Court said: "The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing': *Seitz v. Brewers' Refrigerating Machine Co.*, 141 U. S. 510, 517. . . . . . . 'In deciding upon this intent [as to whether a certain subject was intended to be embodied by the writing], the chief and most satisfactory index . . . . . . is found in the circumstances whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation': Wigmore on Evidence (2d ed.) vol. 5, page 309."

It is plain that the "agreements [to] be maintained" related to the employment of appellant. Appellant testified that he did not own the stock and fixtures, that the consideration of about $1,900 was paid to Conrad Schneider, who was the owner thereof, and that appellant was partner-manager of the business. It was after the final settlement had been made and the stock and fixtures moved to appellee's place of business that appellant began his employment with appellee, and neither party had posted the $500, which was to be held for six months, as provided by the contract.

There was also testimony from which it could be

inferred that on the day of the settlement and transfer, which was sixteen days after the execution of the contract, there was an oral agreement to the effect that appellant would not post the $500 because he did not have the money, and that his employment would be at will. "Parties may, by subsequent oral agreement, modify a written contract which they previously have entered into. The new contract thus agreed upon is a substitute for the original one in so far as it alters, modifies, or changes it": *Knight v. Gulf Refining Co.*, 311 Pa. 357, at page 360, 166 A. 880, at page 882. See, also, *Cheponis' Estate*, 148 Pa. Superior Ct. 515, 517, 25 A. 2d 779.

The appeal is dismissed