## Markides, Appellant, *v.* Soffer.

216

Argued April 21, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*William J. Krzton,* with him *Albert G. Brown,* for appellants.

*Seymour H. Weiss,* for appellee.

OPINION BY ARNOLD, J., December 12, 1952:

This is an action of assumpsit to recover damages for breach of a covenant contained in a deed from defendant to the plaintiffs. After trial by the judge without a jury, judgment was entered for the defendant on a question of law, and the plaintiffs appealed.

The defendant was the owner of a building composed of three storerooms, and in 1940 conveyed the

end storeroom to the plaintiffs, who had previously occupied it as his tenant. The deed provided: "Grantees are to receive heat from the center [storeroom] or Mr. Stone [the defendant's tenant-occupant of the center] as long as the building remains and agree to pay for one-third of the coal." The entire building was heated from the center storeroom. Heat was provided for the plaintiffs until the end of 1943, when Mr. Stone, the tenant of the center portion of the premises, vacated the same. Defendant having entered the army, the plaintiffs thereafter asked his agent about the supply of heat. The agent wrote to inquire what was to be done and was advised by the defendant to "use your own discretion."

Defendant also testified: "When I sold him this building . . . he said, . . . 'what are you going to do about heat?' and I said, 'To be fair to you, you can receive heat from the center of the building or Mr. Stone', and he said, 'How about putting it down in writing?' . ." He further testified that he told plaintiffs, "You can have heat from the center of the building, receive heat." Defendant was asked, "You intended as long as you had the building you would rent . . . [it] and make the tenant who took that center section agree to supply heat to Mr. Markides?" and he answered, "That's right." He further acknowledged the execution of a receipt for the down payment which contained the same provision as the deed.

Plaintiffs testified that it was intended that the defendant supply heat, but the latter contends that it was only an agreement that the plaintiffs could have heat if they and the tenant of the center storeroom "got along," i.e. only if the tenant was willing to permit it.

The lower court determined that the provision was too uncertain to permit enforcement, and that the

duty of the defendant to supply heat could not be implied.

"The primary object in the interpretation of any written instrument is to ascertain and effectuate the intention of the parties": *Hess v. Jones,* 335 Pa. 569, 572, 7 A. 2d 299. "The standard of interpretation . . . except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean.": Restatement, Contracts, §230. "The following rules aid the application of the standards stated in . . . [§230]: (d) All circumstances accompanying the transaction may be taken into consideration. . . (e) If the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation.": Restatement, Contracts, §235. "Where the meaning to be given to an agreement. . . remains uncertain after the application of the standards of interpretation stated, . . . the following rules are applicable: (a) An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect. . . (d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law. . .": Restatement, Contracts, §236. See

also *Kast v. Jackson & Moyer, Inc.*, 150 Pa. Superior Ct. 171, 27 A. 2d 662; *Ransberry v. Brodhead's Forest and Stream Association*, 315 Pa. 513, 174 A. 97; *Disston Estate*, 349 Pa. 129, 36 A. 2d 457; *Price v. Anderson*, 358 Pa. 209, 56 A. 2d 215; *Kimmel v. Svonavec*, 369 Pa. 292, 85 A. 2d 146.

Application of the foregoing rules requires that the defendant provide heat for plaintiffs' storeroom "as long as the building remains." No reasonable construction of the provision, in the light of circumstances existing at the time of the bargain, can allow a different result. The grantor used the words *"are to receive,"* which are more than passive and which must be taken to mean that he would supply heat so long as the building existed, provided that they paid one-third of the cost. Furthermore, if there was no intention that the grantor be under a duty to supply the heat, why the use of the phrase, "as long as the building remains"? Certainly if the heat depended on an agreement in the future between grantees and the tenant of the center storeroom, such phrase in the transaction between grantor and the grantees would have served no purpose. " 'It is a cardinal rule of construction of deeds that no part shall be rejected if it can be given a meaning' " (*Reilly v. City Deposit Bank and Trust Company*, 322 Pa. 577, 581, 185 A. 620), and as pointed out, any other meaning than that here given would be a rejection of the covenant. Again the covenant provides that "grantees are to receive heat from the center [storeroom] *or* Mr. Stone [the defendant's tenant-occupant of the center storeroom] as long as the building remains." Therefore it cannot reasonably be said that the supply of heat was to depend on the continued tenancy of Mr. Stone, since the words are that the heat is to be received from the center storeroom *or* Mr. Stone. The fact that

the storerooms were part of one building and that the center contained the only heating unit strongly supports this conclusion, for if the defendant decided to occupy the center storeroom himself he would certainly be bound to furnish the heat.

In addition, the arrangement was carried out with defendant's tenant for several years, and when the tenant, Stone, moved and defendant was asked by his agent what should be done about heat for the plaintiffs, he did not assert that he was not responsible, but directed the agent to "use your own discretion." Furthermore, defendant's own testimony was that he intended to "make the tenant who took that center section agree to supply heat to Mr. Markides." His making of a bargain which became inconvenient and burdensome cannot destroy the effect of his grant.

Reliance is placed upon *Penn Iron Co. Ltd. v. Diller,* 113 Pa. 635, 6 A. 272, but that case is distinguishable. There were no words of grant in it and nothing from which a "duty" could reasonably be implied. Here "the obligation arises from a consideration of the necessary object and purpose of the contract" which are a vital part of the transaction. Since there are no specific findings or conclusions as to the amount of damages necessarily and properly allowable, the case must be remanded to the court below for appropriate findings.

Reversed with a procedendo.