## Nelson Dairies, Inc. v. Royal

*Smillie, Bean & Scirica,* for plaintiffs.

*High, Swartz, Childs & Roberts,* for defendants.

FORREST, J., June 13, 1955.—This case comes before us on preliminary objections in the nature of a demurrer to an amended complaint in assumpsit. Plaintiffs originally filed a complaint in equity against

defendants, alleging that said parties entered into a written agreement between themselves on September 26, 1952. Pursuant to Pa. R. C. P. 1019(h), a copy of the alleged agreements was annexed to the complaint. This alleged agreement contained a recital that: "Whereas (plaintiff) has agreed to loan the sum of Six Thousand Dollars ($6,000.00) to (defendants) to purchase a luncheonette and danceland situate at 24 Crooked Lane, Bridgeport, Pennsylvania, for the period from September 29, 1952 to March 1, 1956." The alleged agreement further provided:

"2. That the prices to be paid by the Dealer to the Company for the milk and dairy products shall conform to the prices fixed by the Pennsylvania Milk Control Commission.

"3. That the price to be paid by the Dealer to the Company for ice cream shall be as follows:

"(a) A surcharge of ten cents a quart on the purchase of bulk and packaged ice cream above the wholesale price of Company.

"(b) All quartage rebates shall be assigned to the Company.

"4. The aforementioned surcharge and rebate shall be applied toward the payment of the loan of Six Thousand Dollars ($6,000.00) and interest thereon."

The original complaint in equity concluded with a prayer for an order enjoining defendants from violating the agreement and for a judgment for a sum certain alleged to have been expenses incurred by plaintiffs for and in behalf of defendants. Defendants objected preliminarily to the complaint in equity on the solitary ground that plaintiffs had a full, complete adequate nonstatutory remedy at law, and asked that the action be certified to the law side of the court. In an opinion and order dated May 11, 1954, we sustained the preliminary objection, certified the action

to the law side of the court and granted leave to plaintiffs to file an amended complaint claiming money damages. Such amended complaint has been filed and it is to this pleading that the present preliminary objections have been made. The amended complaint is expressly predicated upon the same alleged written agreement as the original complaint. Apart from the prayers for relief, the only material difference between the complaint in equity and the complaint in assumpsit is that the latter contains a statement of the calculation of alleged loss of profits for the contract period.

The gist of the preliminary objections is that no cause of action has been stated for the reasons (1) that any right of plaintiffs to damages is dependent upon the refusal of defendants to repay the loan of $6,000, which refusal has not been alleged, and (2) that the agreement of September 26, 1952, is unenforceable because of lack of mutuality and because the provisions pertaining to the fixing of prices for ice cream are unreasonable.

Defendants contend that the "main object of concern to the contracting parties was the loan and its repayment," that the "Main objective of the 'requirements' phase of the contract was to assure the repayment of the loan." They base their argument on the recital preceding the operative clauses of the contract. They treat the recital as if it were an operative clause. This overlooks the general rule that "recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous. . . . In other words, recitals . . . cannot control the clearly expressed stipulations of the parties; and where the recitals are broader than the contract stipulations, the former will not extend the latter." 17 C. J. S. 733, citing Krum v. Grube, 6 D. & C. 65, 66 (1925), where it was said:

"a recital of the purposes of the instrument cannot control the plain language contained in the body of the instrument." It is clear that if we were to adopt defendant's position we would be lending judicial sanction to a construction which would be a radical departure from the plain language of the operative clauses of the contract.

Defendants very properly point out that the primary object in the interpretation of any written instrument is to ascertain and effectuate the intention of the parties: Markides v. Soffer, 172 Pa. Superior Ct. 215, 218 (1952). "But 'Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent' ": Gately and Fitzgerald v. Saladoff, 174 Pa. Superior Ct. 56, 58 (1953). The argument that the agreement should be construed only as a security instrument unduly warps and twists the meaning of plain language.

The next consideration is whether as contended by defendants, the agreement of September 26, 1952, is unenforceable because of lack of mutuality. No authority has been cited in support of this argument, for the reason, we assume, that none exists. In this case a mutual contract has been alleged, within the definition of Jessup & Moore Paper Co. v. Bryant Paper Co., 283 Pa. 434, 440 (1925), where it was said:

"In order that a contract be mutual, it is not necessary that each should have precisely the same remedy, either in form, effect or extent. It is sufficient if both have the power of compelling performance of the promises respectively made."

If by mutuality, defendants are referring to the existence of reciprocal rights and duties, then certainly there is mutuality. Plaintiffs are obliged to furnish defendants with all their requirements, just

as defendants are required to purchase all their milk and dairy products from plaintiffs. However, if by mutuality, defendants are referring to the existence of reciprocal remedies they are still on legal quicksands. Since the court did remove this case from equity and certify it to the law side the remedy of either party in case of breach by the other is money damages.

Finally, defendants say that the agreement is unenforceable because the provisions governing the determination of prices are unreasonable. Again they cite no authority for their proposition. The provisions in question are part of a "bargain to deal exclusively with another," which, according to the Restatement of the Law of Contracts, §516, "do(es) not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly." Whether this contract effects, or forms part of a plan to effect, a monopoly is a question of fact, or one of mixed law and fact. The general rule applies, i.e., that where a pleading attacks a contract "as being offensive to law and violative of public policy, the whole transaction should be inquired into by submitting the case to the jury": Forbes v. Forbes, 159 Pa. Superior Ct. 243, 246 (1946). We recognize that where the terms of the contract have been definitely ascertained and legality is not dependent upon surrounding circumstances, the matter is strictly one of law and the court not only may, but should determine whether the contract is void as in contravention of public policy: Borden v. Ellis, 158 Pa. Superior Ct. 259 (1945). However, as a general proposition, *reasonableness* depends upon the circumstances, and in this case we are of the opinion that the burden of proving unreasonableness devolves upon the party pleading the same. Therefore, we shall not undertake to dispose of the case on these preliminary objections.

*Order*

And now, June 13, 1955, the preliminary objections are overruled. Defendants are allowed 20 days from this date within which to file an answer on the merits.