## Yardis Advertising Co. v. Lee Electronics, Inc.

*Jacob J. Siegal,* for plaintiff.

*Robert H. Malis,* for defendant.

DEPUY, J., June 11, 1963.—Plaintiff, a Pennsylvania Corporation (hereinafter referred to as "Yardis") filed its complaint in assumpsit on May 2, 1962, averring that defendant corporation, Lee Electronics, Inc. (hereinafter referred to as "Lee"), about April 24, 1961, entered into a written contract with plaintiff (a copy being annexed to the complaint) whereby plaintiff agreed to furnish to defendant certain publicity, public relations and advertising services in exchange for a fee of $5,500, payable $1,500 in cash and the balance of $4,000 in form of 2,000 shares of defendant's common stock, to be registered with the Securities and Exchange

Commission within 12 months from the date of the contract. The complaint averred further that plaintiff had provided all the services required by the said contract; that defendant paid plaintiff $250 under the contract, but failed to pay the remainder or to deliver the said stock, and that plaintiff demands judgment against defendant for $5,250 plus interest and costs.

Defendant filed an answer denying that plaintiff had performed under the contract and praying dismissal of the complaint. With the answer was a counterclaim seeking recovery of the $250 already paid.

Plaintiff filed a reply to the counterclaim denying any duty to repay the $250.

The parties waived jury trial and the case was tried before the undersigned as visiting judge on April 18 and 19, 1963. By stipulation of counsel it was agreed that for reasons of economy and expedition, it would not be necessary to transcribe the evidence before the court should decide the case.

From the evidence at the trial, we make the following

### Findings of Fact

1. Plaintiff and defendant corporations entered into a written contract on or about April 24, 1961, according to the terms set forth in the Yardis letter of that date annexed to the complaint.

2. For some periods previous to the agreement of April 24, 1961, Yardis had been doing publicity work for Lee Electronics, Inc., or rather for its predecessor business entity, work which Eli Goldstein, President of Lee, considered quite valuable and for which he had paid in full up to the inception of the present contract.

3. The contract of April 24, 1961, was, by its terms, to extend for a 12-month period from the date thereof.

4. For the year's services outlined, the contract required Lee Electronics, Inc., to pay the amount of $5,500 plus certain extras enumerated in the contract.

5. The sum of $5,500 was to be paid according to the contract by a $1,500 cash payment and by defendant delivering to plaintiff before the expiration of the 12-month period 2,000 shares of Lee Electronics, Inc., stock, said to be valued at $4,000.

6. Defendant paid $250 on account of the amount due under the contract.

7. The contract of April 24, 1961, is cast in terminology that focuses upon "effort" or "attempts" on the part of Yardis to obtain printing of publicity material favorable to defendant in publications of various sorts, ranging from the daily general press to the electronic trade press, financial newspapers and so forth.

8. The contract of April 24, 1961, focuses in its language upon both general news in the various publications, including the financial sections, and also upon feature stories beyond routine news, involving special effort by the Yardis staff to dramatize data of one sort or another having to do with Lee Electronics, Inc., and its public image.

9. During some 60 days following execution of the contract, plaintiff expended certain efforts in carrying out its part of the agreement, obtaining a reasonable degree of cooperation from defendant's staff in providing background data. Plaintiff is entitled to be paid for these services.

10. The contract of April 24, 1961, describes the duties to be undertaken by Yardis under four main paragraphs. The first (a) is headed "Publicity" and includes news efforts of various sorts mentioned above. The second section (b) deals with "Stockholder and Financial Relations" and lays out the duty of preparing quarterly reports for stockholders (a duty which Lee later waived), and refers to cooperation with underwriters and brokers in preparing special reports "as required" and attendance at and assistance in planning the stockholders' meetings. The third section (c) deals with

"General Public Relations Counsel" and requires the Yardis staff to meet with Lee monthly to "plan activities" and to be available for special projects. The fourth section (d) deals with "Supplier Relations" and requires Yardis to work out plans for paid advertising, using cooperative advertising funds.

11. It is clear from the evidence that, as the months progressed, no particular activity was initiated or expected by defendant at any particular time, under sections (b) and (c) of the contract, nor did Yardis do any particular work under these paragraphs. It appears no blame can fairly be attached to either party for either nonperformance or for impeding performance under sections (b) and (c).

12. Under section (d) there was some activity by Yardis, but it did not eventuate in any particular result. There was some evidence that Lee did not exert itself fully toward supplying Yardis with factual material or assisting Yardis to go ahead.

13. At the beginning, some work was performed by Yardis under the contract in connection with the company's annual meeting, which was intended to occur on May 26, 1961, but evidently did not occur until June 10, 1961.

14. Most of the Yardis work under the contract was performed for Yardis by a free-lance publicity man named Bushman. It appears he was employed and paid on an ad hoc basis.

15. The evidence shows that, in relation to the highly effective publicity created by the Yardis firm for the Goldstein business during the months preceding April 24, 1961, the Yardis publicity product after April 24, 1961, was fairly modest. It is questionable whether the level of quality of the Yardis-Lee publicity and initiative rose to the legal requirement of workmanlike service that would be reasonably expectable in public relations and in other fields.

16. It is questionable whether defendant's staff made itself reasonably available to Yardis from time to time for the purpose of supplying information to Yardis as the basis for publicity.

17. Lee's financial problem resulting from the 1961 stock market break impeded the intended issue of additional Lee Electronics stock, and this fact and its repercussions interfered with Lee's cooperation with Yardis and Yardis' capability of performing the required publicity work under the contract.

18. Yardis did not evidence sufficient initiative and determination after the first few months of the contract's life in seeking out defendant's staff at their office or elsewhere, or putting defendant on notice in writing as to what service or cooperation Yardis expected or required and of the impossibility of Yardis performing without greater assistance from defendant.

19. Because of the progress of events resulting from the stock market break and the cancelled issue of additional shares of Lee stock, it became impossible or impractical for defendant, apart from the question of Yardis' entitlement thereto, to deliver the 2,000 shares of stock to Yardis.

20. Considering such publicity work as was done by Yardis under the contract for which some value can be considered to have redounded to Lee, Yardis is entitled to an additional payment of $1,000 from defendant beyond the $250 previously paid, and with legal interest from April 24, 1962, and costs.

### Conclusions of Law

1. The letter of April 24, 1961, resulted in formation of a contract between Yardis Advertising Company, plaintiff, and Lee Electronics, Inc., defendant, whereby plaintiff was to perform the publicity work described in the letter for defendant during the period of 12 months

ensuing after the date of the letter and defendant was to pay therefor the sum of $5,500 in the manner provided.

2. The terms of the said contract are lacking considerably in specificity, but we find them sufficiently explicit to avoid condemnation under the rule making some contracts void for vagueness.

3. In important respects plaintiff displayed insufficient initiative and effort in carrying out its performance of the contract at a legally required level of competence, and at the same time, defendant by its failure to cooperate actively with Yardis in furnishing necessary information for publicity work, hampered plaintiff in the pursuit of its responsibilities.

4. Plaintiff is entitled to be paid for the extent and value of its services during the early months of the contract.

5. The reasonable value of Yardis' services amounts to $1,000 in addition to the $250 which defendant has paid.

6. A verdict and judgment must be given for plaintiff and against defendant in the amount of $1,000 plus interest at six percent from April 24, 1962, and costs.

## Discussion

Defendant's first contention is that the contract averred by Yardis cannot be recognized by the court or dignified as a contract within the meaning of the law on the ground that it is void for vagueness; that the least obligation imposed on plaintiff by the contract is zero. Plaintiff, on the other hand, argues that there is a minimum obligation imposed on plaintiff by the terms of the letter of April 24, 1961, in that plaintiff, using his best efforts, is required to produce regular publicity tending to establish a favorable public image of defendant. Plaintiff asserts that such a type of contract where, for example, a party is required to use

his "best efforts" exists in many parts of the law and is no more vague than, as an instance, a "requirements" contract where all the requirements of a party, as for example, of cement, are to be purchased by a party under the terms of an agreement (in which case conceivably the requirements may turn out to be "none"). Plaintiff further argues that it is too late for defendant to raise the defense of vagueness of the agreement inasmuch as this is not pleaded in the answer, nor did defendant attempt to assert this defense by filing a preliminary objection in the nature of demurrer.

Defendant responds that under Pa. R. C. P. 1032, "A party waives all defenses and objections which he does not present either by preliminary objection, answer or reply, except

"(1) that the defense of failure to state a claim upon which relief can be granted . . . may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits".

Under this rule it seems clear that failure by a defendant to plead that plaintiff has failed to plead a cause of action does not foreclose defendant's relying upon such a defense at a later stage, and in the present case at the trial.

Defendant, in contending the agreement herein is too vague for the court to enforce, relies on Kirk v. Brentwood Manor Homes, Inc., 191 Pa. Superior Ct. 488, where there was a written agreement under which plaintiffs were to purchase a dwelling being erected by defendant. Defendant failed to go through with the purchase agreement and plaintiff sued to recover his deposit. The court below held for plaintiff on the ground that the contract was too vague to be enforced. The Superior Court reversed and held the contract binding, but stated on page 492: "It is of course true that, in order for a contract to be enforceable, the agreement

of the parties must be sufficiently definite that their intention may be ascertained to a reasonable degree of certainty: Seiss v. McClintic-Marshall Corp., 324 Pa. 201 . . . However, 'the law does not require the impossible or impracticable of those who enter into business agreements or transactions; and it is therefore well settled that the terms of a contract need not be expressed with exactness but only with reasonable certainty.' " See also Betterman v. American Stores Co., 367 Pa. 193.

The Betterman case involved an action of assumpsit for the cost of operating a motor carrier plus a reasonable profit guaranteed under a written contract. Defendant contended the contract was indefinite and unenforceable. The court said at page 203: "If, therefore, the contract, or any part of it, is susceptible of two reasonable constructions, 'It is an elementary proposition that a written contract should, in case of doubt, be interpreted against the party who has drawn it.' ". . .

In the Seiss case there was a written contract by which plaintiff was to be taken care of for life by his employer in return for refraining from bringing suit against his employer for injuries. The Supreme Court held the agreement too indefinite to enforce, saying at page 204: "The contract here set up is so lacking in precision, so indefinite and vague that nothing certain about it can be formulated. In order that a contract be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty."

Defendant further relies on Markides v. Soffer, 172 Pa. Superior Ct. 215, and Halowich v. Amminiti, 18 D. & C. 2d 306 (affirmed per curiam by the Superior Court), and upon the Restatement of Contracts, §§235 and 236. Section 236 states:

"Where the meaning to be given to an agreement . . . . remains uncertain after the application of the standards of interpretation stated . . . the following rules are applicable:

"(a) An interpretation which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect. . . .

"(d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law."

Restatement of Contracts at §32 provides: "An offer must be definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."

Though the problem is not free from doubt, we conclude that the contract, uncertain as its language is in defining any legal obligation imposed on plaintiff, does rise to the level of clarity that the law will recognize and enforce.

Plaintiff in seeking recovery for the entire face value of the contract, $5,500, less the payment made, argues that if plaintiff did not complete all the work called for by the contract, this is because defendant's conduct prevented plaintiff from performing. Plaintiff's witnesses described a series of efforts on the part of Bushman, its free-lance agent and publicity man, to get in touch with Goldstein, the principal officer of Lee Electronics, Inc., in order to obtain information to use in public relations work. They contended it was impossible to locate Goldstein or to get information.

Undoubtedly a party to a contract who prevents or hinders the performance of a condition upon which his

liability depends, cannot take advantage of the other party's failure of performance: Slater v. General Casualty Co. of America, 344 Pa. 410; Ranier v. Champion Container Company, 294 F. 2d 96 (1961).

However, on the facts here, it appears defendant's unavailability not only impeded plaintiff's obtaining factual material to go ahead on some parts of the publicity effort called for by the contract, and that this was the result in part of the stock market dip and defendant's consequent financial difficulties, but that plaintiff itself was lacking in significant respects in the energy and effort, in quantity and quality, required for the task it had assumed.

For one thing, plaintiff or its agent insisted on contacting defendant by telephone and never once went to defendant's plant or office, if we recall the evidence correctly, or submitted any letter demands or laid out in writing exactly what was sought in the way of information or of conferences in the future in order to carry forward the work under the contract.

On the question of measure of damages, the rule is stated in Purdy v. Massey, 306 Pa. 288, 295: "In fixing compensation for damages resulting from breach of a contract the general rule is that the injured party should be placed in the same position as if there had been no breach. The object of the law is to place such party in as good position as if the contract had been kept."

Where a contract has been breached by a defendant, plaintiff, if not at fault himself, is entitled to recover the profit he would have made under the contract, as well as any loss sustained by him because of purchasing materials, having employes under wage contract who were prevented from working, or otherwise. But a party impeded in performing is under a duty to use reasonable effort to mitigate damages.

It seems clear to us, as the facts are now seen to exist, that proper pleading would have required plaintiff here to have first stated one count based on the contract of April 24, 1961, and a demand for damages for breach, and a second count seeking damages in quantum meruit. If the court had found the first contract too vague to be recognized by law, then plaintiff would have been well situated to recover for the value of the services it did perform, assuming those services had value to defendant.

However, this conjectural problem is not presented. We must dispose of the pleadings and evidence as they are before us. We conclude that there was a contract created by the letter of April 24, 1961, in spite of its imprecise terms, and that because of the combined failure of plaintiff and defendant the contract was not carried out in important respects, though it was carried out in part. We think the fair value to defendant of what was done comes to $1,250, of which $250 has been paid. Plaintiff should have judgment for $1,000 in addition, plus interest.

Now, June 11, 1963, verdict and judgment are given for plaintiff in the amount of $1,000 and against defendant, with interest at six percent from April 24, 1962, and costs of suit. Verdict and judgment are given for plaintiff on the counter claim. Exception granted to both parties.