## Sanctis Construction, Inc., Arbitration Case.

Argued April 12, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, ROSS and ARNOLD, JJ. (DITHRICH, J., absent).

*J. Alfred Wilner*, for appellant.

*A. G. Nesbitt*, with him *Harvey A. Miller* and *Miller & Nesbitt*, for appellee.

OPINION BY ARNOLD, J., July 19, 1945:

This was an award of arbitrators in favor of Sanctis Construction, Inc. (hereinafter called Sanctis) and against the Housing Authority of the City of Pittsburgh (incorporated in Pennsylvania under the Housing Authority Act of 1937, P. L. 955 and hereinafter called the Authority). The court below refused to vacate the award and the Authority appealed. The Authority had a housing project for six hundred and sixty dwellings, known as Arlington Heights, for the completion of which a number of different contracts were let, among them one to Sanctis for $56,450 for the sewers, water and gas mains including trench excavation, and one to Hinman Brothers for filling and grading.

The Authority's superintendent of construction directed Sanctis to finish first a particular three hundred feet of sewer so that the grading contractor, Hinman Brothers, could go on with their filling and grading. The sewer, the depth of the trench, and the grade were specified by the Authority, and Sanctis laid this particular three hundred feet in exact conformity with the specifications of the Authority, and it was completed in March, 1942. It was only a small part of the Sanctis contract. When done, in the language of the Authority's superintendent of construction, it was "a swell job". The grade and depth specified required part of the sewer to be laid some six or eight inches below the surface of the ground and Sanctis placed fill material over this shallow section. When the three hundred-foot section was completed, the Authority neither inspected nor formally accepted it, but the work was, however, satisfactory to the Authority's inspector.

The Authority directed the grading contractor to move on this section of the premises and to complete the grading and the filling. The grading contractor moved in with a "bull dozer" and other quite heavy equipment and placed a fifteen-foot fill thereon. The grading contractor was under the Authority's direction, control and inspection at all times. The Authority also

permitted other contractors to move heavy equipment over the three hundred-foot section where the fill was made.

In May, 1942 the Authority discovered that the sewer, for some ninety feet, had collapsed and directed Sanctis to repair it, which it did under protest and at a cost of $625.70, which amount was proper and is not in dispute. The Authority did nothing to hold the grading contractor for the loss although it knew what had happened and knew that Sanctis had done "a swell job".

Whether Sanctis or the Authority should stand the $625.70 loss was, by written agreement, submitted to arbitrators who found against the Authority and for Sanctis.

In addition to the foregoing facts there appeared to be some question as to what caused the sewer to collapse, but the superintendent for the Authority testified that he "was quite sure there would have to be something to happen on the surface" to collapse it, and he also conceded that nothing which Sanctis did caused the collapse.

The surface was in the exclusive control of the Authority. Sanctis, of course, only guaranteed its own skill but did not guarantee the specifications. Whether the collapse of the sewer was caused by improper specifications so that the sewer could not stand the weight of heavy equipment on the fill, or whether the grading contractor's heavy equipment collapsed it, does not appear, but it does appear that the collapse was not caused by Sanctis, and was caused by something on the surface, and that whatever caused it was under the control of the Authority and out of the control of Sanctis.

For the vacation of the award, the Authority stands on a clause of the contract reading: "The contractor shall be . . . responsible for the proper care of all . . . work performed until completion and final acceptance. . . ." Under this clause the Authority claims that it was the duty of Sanctis to do anything which might be required in order to prevent the sewer from collapsing. But this is too broad a statement. The contract was the

Authority's own form and its language is to be construed most strongly against it: *Reid v. Woodman of World,* 139 Pa. Superior Ct. 492, 12 A. 2d 498; 340 Pa. 400, 17 A. 2d 890; see Restatement, Contracts, Section 236(d).

Under the above quoted provision, the contractor was not bound to protect the work against the onslaught of the Authority acting either through its own agents or its own contractors who were under its control. Here the Authority, with full knowledge of the shallowness which it, itself, had specified, directed the grading contractors to go on the premises with heavy equipment and make the fill. It was no part of the Sanctis contract to place this fill over the shallow part of the sewer. The Authority had contracted with, and directed this to be done by, Hinman Brothers. Therefore, the suggestion that Sanctis ought to have placed enough filling over his work so that equipment of any weight would have been supported is without merit, and this is particularly true because it may very well have been that the heavy equipment which collapsed the sewer was equipment that was moved over the completed fill. Nor is the suggestion tenable that Sanctis should have built a concrete arch over the sewer in question. The Authority knew when it took bids that this section was less than a foot below the surface. If it wanted the sewer covered with a concrete arch, it could have specified that and paid the contractor therefor. The specifications made no such requirement, and it is not now within the power of the Authority to place such an uncompensated burden on the contractor. No reasonable construction of the contract can make Sanctis an insurer against the acts of the owner, the Authority. The contractor does not indemnify against the negligence of the owner or the owner's contractors or servants: *Perry v. Payne,* 217 Pa. 252, 66 A. 553.

It is argued that this section of the sewer was the property of the contractor until *formal* acceptance. But *formal* acceptance can be waived when, as here, the

owner is fully satisfied with the work, takes it over, turns over the premises to another contractor and puts those premises in the possession of another. The case here is much similar to the taking over of a building on which one contractor has done his work and other contractors are to do theirs.[1] The acts of the Authority indicated an acceptance of the work, and where that work is thereafter damaged or destroyed by the agents or contractors of the owner there can be no liability on the contractor where the damages occurred after the premises passed into the hands of the owner: Cf. *Hunn v. Pa. Inst., etc.*, 221 Pa. 403, 70 A. 812. By the subsequent acts of the Authority both in regard to grading and allowing other equipment to pass over the sewer, and by taking possession of the premises, any *formal* acceptance was waived.

The Authority also complains that the award was irregular because the witnesses were not sworn. This is too broad a statement. It is true that the record does not show they were sworn. There is a presumption that they were sworn: *People v. Duffy* (Cal.), 294 P. 496. However, the right to object to the failure to have witnesses properly sworn is waived by failing to object in time so that the defect or irregularity may be remedied. The matter is not jurisdictional but a mere irregularity which may be waived: 70 C. J., Witnesses, Section 654. It was, therefore, clearly waived in this case as all the testimony (both direct and cross-examination) was without objection.

The judgment is affirmed at the cost of the appellant.

DITHRICH, J., took no part in the consideration or decision of this case.

---

[1] The certificate of an architect is not necessarily conclusive and may be excused where wrongfully prevented: *Thaler Bros. v. Greisser Const. Co.*, 229 Pa. 512, 79 A. 147.