759

GUARANTY TRUST CO. OF NEW YORK v.
WILLIAMSPORT WIRE ROPE CO.

GEHRON et al. v. BETHLEHEM
STEEL CO.

No. 959.

United States District Court,
M. D. Pennsylvania.

Oct. 14, 1952.

For Motions for New Trial and to Amend
Findings of Special Master, see
107 F.Supp. 762.

Charles Bidelspacher, Jr., Charles F. Bidelspacher, Lester L. Greevy, Daniel F. Knittle, Williamsport, Pa., for petitioners.

Robert T. McCracken, Philadelphia, Pa., William J. Fitzgerald (of Fitzgerald, Kennedy, Eckersley & O'Brien), Scranton, Pa., for respondent.

WATSON, Chief Judge.

This is a suit brought by certain stockholders and former stockholders and former bondholders of Williamsport Wire Rope Company, hereafter referred to as Williamsport. It was commenced in 1946 by a petition filed in the above-entitled action, which was a consolidation of a receivership action brought against Williamsport in 1932 by one of its creditors, Guaranty Trust Company of New York, and a mortgage foreclosure action brought against Williamsport in 1936 by the National City Bank of New York and West Branch Bank and Trust Company, as Trustees under a mortgage securing an issue of Williamsport bonds. A decree was entered in this consolidated action directing the sale of all of Williamsport's properties. The properties were sold at public sale to the respondent, Bethlehem Steel Company, hereafter referred to as Bethlehem. The sale was confirmed by decree of the Court. Thereafter, on December 15, 1938, the Receivers were discharged and the consolidated action was terminated.

In the present proceeding petitioners contend, in substance, that the aforesaid decrees of sale and confirmation and the sale of the Williamsport properties under such decree of sale were the result of a fraudulent conspiracy between Bethlehem, Judge Johnson, at that time a Judge in this Court and who granted such decrees, and certain officers of the court appointed by Judge Johnson in the course of the receivership and foreclosure proceedings. The prayer of the petition is that the case be reopened; that the sale of the assets of Williamsport to Bethlehem be set aside; that such assets, together with the improvements and additions thereto, and the issues and profits therefrom, be declared to be the property of all shareholders and former shareholders and former bondholders of Williamsport who may come into the proceeding.

On March 23, 1946, this Court referred the issues raised by the petition and answer to Albert H. Aston, Esquire, as Special Master, a highly competent lawyer and a Referee in Bankruptcy in this District. The Court's order directed the Special Master to make findings of fact and conclusions of law and report the same to the Court together with recommendations.

Pursuant to the order of reference, the Special Master held numerous hearings on the issues raised by the petition and intervening petition [1] and the answers filed thereto. The transcript of the testimony introduced at these hearings contains almost 5,000 pages and there are over 700 exhibits. Upon completion of the hearings, briefs were filed on behalf of the parties, together with detailed requests for findings of facts and conclusions of law, following which oral argument was held on June 26, 1950.

1. An intervening complaint and petition was filed on June 4, 1946 in behalf of certain other stockholders, former stockholders, and former bondholders.

On January 24, 1952, the Special Master filed a report consisting of 173 pages, together with the findings of fact requested by the parties and upon which he had ruled. All of which discloses careful study and preparation on the part of the Special Master and full appreciation of the responsibilities devolving upon him.

In his report the Master concludes that a conspiracy to defraud existed and that the conspiracy resulted in the orders by which the sale of Williamsport's assets was made to Bethlehem. The Master, therefore, recommends, inter alia, that the sale be set aside and that Bethlehem hold the assets of Williamsport as constructive trustee for the lawful owners; the Master also finds that the sales of preferred and common stock to Bethlehem from and after July, 1936 were induced by fraud and recommends that Bethlehem hold the stock as constructive trustee for the benefit of the rightful owners. The Master, however, further finds that the sale of the Williamsport bonds to Bethlehem was valid and therefore recommends that the intervening complaint and petition be dismissed as to the former bondholders.

Petitioners and respondents both filed objections to the Master's Report, and oral argument was had before this Court on March 27, 1952.

In considering the Master's Report and the objections thereto, the Court must be guided by Rule 53(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C., which provides that "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous". Therefore, the Master's findings of fact must be treated as correct and binding upon the Court unless they are clearly in conflict with the weight of the evidence upon which they were made.

### I

The objections filed by petitioners to the Master's Report, though several in number, are all to the effect that the conspiracy existed throughout the Williamsport Receivership, i. e., from 1932 on, and not from July, 1936, as found by the Master.

Without entering into any discussion of the evidence, the Court finds that the Master's Report and the evidence introduced in the case do not support petitioners' objections, and they must, therefore, be denied.

### II

Respondent has filed 73 objections to the Master's findings of fact, as well as other objections to conclusions of law, recommendations, and rulings on proposed findings of fact. They need not be considered separately but may properly be resolved into four general arguments:

A. There Is No Evidence Of Conspiracy From The Beginning To The End Of The Williamsport Case. Having No Proof, The Master Founds His Report On Conjecture.

■■ It is a general principle that fraud is never to be presumed, and he who avers it, takes upon himself the burden of proving it: Budd v. Commissioner of Internal Revenue, 3 Cir., 1930, 43 F.2d 509; and it must be established by clear and convincing proof. Morrison v. Heller, 3 Cir., 1950, 183 F.2d 38. But while fraud is never to be presumed, fraud, like any other fact, may be concluded from circumstantial evidence. Chorost v. Grand Rapids Factory Show Rooms, 3 Cir., 1949, 172 F.2d 327.

In Connolly v. Gishwiller, 7 Cir., 1947, 162 F.2d 428, 433, the court said, "There is no general rule for determining what facts will constitute fraud, but it is to be found or not according to the special facts of each particular case. It is rarely susceptible of direct proof, but must ordinarily be established by circumstantial evidence and legitimate inferences arising therefrom, which, taken as a whole, will show the fraudulent intent or purpose with which the party acted. * * * Conspiracy is a line of endeavor the success of which is not promoted by advertising. Direct proof of the illegal combination is generally locked within the breasts of the conspirators, and the ultimate fact of the corrupt agreement, if proved at all, must be inferred from established facts and circumstances".

The primary issue before the Special Master in this case was whether or not a conspiracy to defraud did exist as alleged by the petitioners, and whether that conspiracy resulted in court orders by which the sale of Williamsport assets was made to Bethlehem. As would be expected, the petitioners failed to prove any formal agreement setting forth this conspiracy. But fraud may be concluded from circumstantial evidence, and there is no lack of evidence to support the Master's findings as to fraud in this case. The Master's Report is very comprehensive and most thorough, and there is little the Court can add to the Master's Report. Suffice it to say that the Court has examined the voluminous record and studied with care the evidence relating to all the transactions, and tested in light of the ap-

plicable principles of law, the Court finds that the Master was warranted in finding that a conspiracy to defraud did exist. Having found that the Master's findings are not clearly erroneous, under Rule 53(e) (2) of the Federal Rules of Civil Procedure, supra, the Court must accept the Master's findings of fact. Even though the Court is free to draw the ultimate inferences and conclusions which the evidentiary findings induce, the Court cannot say that the Master's conclusions are erroneous.

Respondent's contention that there is no evidence of conspiracy and that the Master's Report is founded on conjecture is without merit.

**B. There Was No Motive For Corruption.**

Bethlehem contends that it cannot be found that it engaged in a conspiracy to defraud because it had no motive for corruption. Bethlehem maintains that as mortgagee it had the absolute right of foreclosure, and therefore there was nothing Judge Johnson could do to prevent Bethlehem from acquiring the Williamsport properties. Furthermore, Bethlehem says it paid full value for the Williamsport properties.

It is to be noted that Bethlehem required the permission of the court to join the Receivers as defendants in the proposed foreclosure bill. Though a consent order was signed by the opposing interests agreeing to the filing of the bill, Judge Johnson still had it within his discretion to grant or refuse the request. Bethlehem, therefore, had no absolute right to file the bill of foreclosure.

Furthermore, under the circumstances and issues raised in the answers filed to the bill of foreclosure, it was within the discretion of the court to require the submission of a fair and equitable plan of reorganization before the entry of a decree of foreclosure. Bethlehem did not have an absolute right to foreclose.

As to the value of the Williamsport properties at the time of the sale, on the state of the record, the Court cannot say whether or not a fair value was received for the Williamsport properties. But even if we were to concede that Bethlehem purchased the Williamsport properties at the fair market value, it would not necessarily preclude fraud, because a sale may be void even though the buyer purchases the property at what appears to be the fair market value.

Clements v. Moore, 1867, 6 Wall 299, 312, 73 U.S. 299, 312, 18 L.Ed. 786. It is conceivable that the plant was worth far more to Bethlehem than its apparent fair market value. This Court cannot agree that Bethlehem could not possibly have had a motive for engaging in the conspiracy.

**C. The Master's Reliance Upon Hearsay Testimony Is Clearly Erroneous.**

Bethlehem particularly objects to the admission of the testimony of Jacob Greenes, a liaison man between John Memolo and the Johnson family, which testimony was given to the Grand Jury investigating the conduct of Judge Johnson. Though admittedly hearsay, the Master admitted the testimony under the "declaration against interest" exception to the hearsay rule. Respondent contends the Master was in error in admitting the testimony because the exception applies only to declarations against pecuniary or proprietary interests and not penal interests, as was the situation with Greenes. The Master relies mainly on Wigmore on Evidence (3rd Ed.) Vol. V, Sections 1476, 1477; Dissenting opinion of Justice Holmes in Donnelly v. United States, 1913, 228 U.S. 243, 277, 33 S.Ct. 449, 57 L.Ed. 820; and Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, 162 A.L.R. 437, wherein the broad rule that the exception applies to penal as well as pecuniary and proprietary interests is espoused. This broad view apparently has not been adopted by a majority of the courts,[2] including Pennsylvania,[3] but as stated in Root Refining Co. v. Universal Products Co., 3 Cir., 1948, 169 F.2d 514, 538, "it may well be that in a proceeding in which the integrity of the court itself is under investigation, technical niceties should be disregarded and that testimony which has been subjected to the usual tests and safeguards should be admitted in order that the truth may be ascertained".

In any event the question is rendered academic by virtue of the fact that the Master on p. 111 of his report states, "I have reviewed all of the evidence in these proceedings relating to matters covered by Greenes' testimony and have found that there is ample evidence, aside from his testimony, to establish, either directly or by circumstances, every fact essential to the decision of this case to which he testified". A study of the record has satisfied the Court that the Master is correct.

---

**2.** 31 C.J.S., Evidence, § 219, page 962.

**3.** Commonwealth v. Antonini, 1949, 165 Pa.Super. 501, 69 A.2d 436.

D. Former Stockholders And Bondholders Have No Standing In This Suit.

Having agreed with the Master's finding that there was no fraud as to the bondholders, the Court need only consider the position of the former stockholders.

██ It is a fundamental principle that a court of equity in a single suit will investigate and determine all questions incidental to the determination of the main controversy. Greer Investment Co. v. Booth, 10 Cir., 1932, 62 F.2d 321. Since the Court agrees with the Master's finding that the conspiracy began in July, 1936, to allow Bethlehem to retain any of the stock which it purchased from that date, Bethlehem would to that extent benefit from its wrongdoing. Only by setting side all sales to Bethlehem can the Court be certain that all defrauded parties will have been restored to their rights. As recommended by the Master, Bethlehem will be adequately protected by a provision in the Court's order requiring former shareholders to return to Bethlehem the money received for their stock, and interest on such amount, as a condition precedent to recovery.

The foregoing represents a response to each general objection which has been raised by the respondent to the Master's Report. This opinion is by no means exhaustive of the many matters of law and fact raised by respondent, but the Court does not feel that a more exhaustive treatment is called for under the circumstances. The Court is in complete accord with the Master's findings and conclusions, and to go into any greater detail than the Court has already done would be, to a large extent, merely a repetition of what the Master has so ably set forth in his Report.

### III

The objections raised by the petitioners and the respondent will be overruled; the Report of the Master confirmed; and his findings of fact, conclusions of law, and recommendations, will be adopted.

Recognizing the importance of this case to all parties concerned, and that either or both parties may appeal from the order of this Court affirming the Master's Report, this Court, for the present, will withhold further action on the ultimate remedies to be afforded petitioners, including the ascertainment and distribution of assets and profits derived from the transactions, and the determination of the interests of all parties concerned.. For the present, the Court deems it sufficient to declare all findings, orders, judgments, and decrees entered by the Court after July, 1936, which affected the title to Williamsport's assets and the distribution of the proceeds of the sale thereof null and void; to declare Bethlehem constructive trustee of the assets and of such of the proceeds as were distributed to it, together with all improvements, replacements and additions thereto and of all rents, issues and profits therefrom.

As to the preferred and common stock which was purchased by Bethlehem after July, 1936, Bethlehem shall be declared constructive trustee thereof for the rightful owners, subject to liens in Bethlehem's favor for monies paid to sellers, with simple interest.

An appropriate order confirming the Special Master's Report will be filed herewith..