222 F.2d 416
 GUARANTY TRUST COMPANY OF NEW YORK, Complainant,
v.
WILLIAMSPORT WIRE ROPE COMPANY, Defendant.
Carl C. GEHRON et al., Petitioners, George R. Shepherd et
al., Intervening Petitioners,
v.
BETHLEHEM STEEL COMPANY, Respondent, Raymond D. Colble,
d/b/a Interstate Finance & Mortgage Company, Appellant.
 No. 11502.
 United States Court of Appeals Third Circuit.
 Argued March 24, 1955.
Decided May 16, 1955.
Rehearing Denied June 9, 1955.
 
 William J. Oliver, Scranton, Pa., for appellant.
 John Barbe Cupp, Williamsport, Pa. (Williamson & Cupp, Williamsport, Pa., on the brief), for appellees.
 Before GOODRICH, and McLAUGHLIN, Circuit Judges, and LORD, District judge.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 The central issue on this appeal is whether a certain purported assignment of all the remaining claims of a corporation in receivership operated to transfer title to a subsequently adjudicated right to participate in damages for the redress of a fraud practiced upon the assignor many years earlier when it was the owner of particular stock certificates.
 
 
 2
 The corporation in receivership is the Lycoming Trust Company of Williamsport, Pennsylvania. The right to participate in damages is based upon that company's ownership in July, 1936 of 175 shares of the preferred and 549 shares of the common stock of Williamsport Wire Rope Company. All of these shares were sold by the liquidating trustees of the Lycoming Trust Company to Bethlehem Steel Company in December, 1936.
 
 
 3
 In 1937 all of the assets of Williamsport Wire Rope Company were sold to Bethlehem Steel Company. Nine years later, in 1946, some stockholders, former stockholders, and former bondholders of Williamsport Wire Rope Company began the within-named class suit to set aside the 1937 sale of Williamsport's assets to Bethlehem on the ground that such sale had been tainted with fraud. The trustees of the Laycoming Trust Company did not join in this action either as petitioners or as interveners, and so far as the record shows took no interest in the proceedings until after the adjudication.
 
 
 4
 The Lycoming trustees proceeded with the liquidation of that company. By August 9, 1952 they believed they had liquidated all of the assets transferred to them with the exception of a few notes, judgments and other claims which they considered to be of little or no value. They accordingly mailed to each of the Trust Company depositors a check described as 'the 18th and final dividend of 4% which the holders of participation certificate 'A' will receive', and in the covering letter, they wrote:
 
 
 5
 'The Trustees have in their possession a very few notes and judgments remaining unpaid, and which, in their opinion, are of questionable value. These few remaining assets will be sold at public sale to the highest bidder, at 2:30 P.M., on the 17th day of September 1952, in the corridor of the Court House at Williamsport, Pennsylvania. The list of the assets to be sold will be available for examination at the office of the Sheriff of Lycoming County in the Court House, Williamsport, Pennsylvania.'
 
 
 6
 They then inserted the following advertisement in the Williamsport Sun once a week for three consecutive weeks, commencing August 29, 1952:
 
 
 7
 'Notice is hereby given that there will be exposed at public sale on the seventeenth day of september, 1952, at 2:30 P.M., in the corridor of the Court House at Williamsport, Pennsylvania, certain assets now owned and held by Herbert M. Carson, Ira M. Witt and Peter G. Cameron, Liquidating Trustees of the Non-Liquid and Depreciated Assets of Lycoming Trust Company, and consisting of promissory notes secured by judgments entered in the Court of Common Pleas of Lycoming County and promissory notes not secured by judgments, certain shares of corporate stock, one piece of real estate and whatever other items appear on the list hereinafter mentioned, all of which are more specifically and particularly shown on a certain list of assets, which list is presently lodged in the office of the Sheriff of Lycoming County at the Court House, in Williamsport, Pennsylvania, and may be examined by any prospective bidder on any day except Saturday, between 9:00 A.M. and 5:00 P.M.
 
 
 8
 'The aforesaid assets will be sold to the highest bidder either in bulk or separately, or partly in bulk and partly separately, at the decision of the sellers. The right is reserved to withdraw from the sale any part or all of the items hereinabove referred to and as shown on the aforementioned list at any time up to the date and hour of said sale. The right, however, is reserved to reject any and all bids.
 
 
 9
 'Williamson & Cupp, Solicitors of the Liquidating Trustees of Lycoming Trust Company'
 
 
 10
 The list at the sheriff's office referred to in both the letter and the advertisement contained no reference whatsoever to the Williamsport stock certificates, to any claim which the trustees might have against Bethlehem Steel Company in connection with the sale of Williamsport's assets, nor to the proceeding which had been instituted in part by other former stockholders of Williamsport Wire Rope Company against Bethlehem.
 
 
 11
 At the public auction, held as scheduled on September 17, 1952, only two bids were made: one for $25 by Mr. Cupp, the attorney for the liquidating trustees; the other for $30 by Mr. Coble on behalf of Interstate Finance and Mortgage Company, the appellant herein. The $30 bid was accepted.
 
 
 12
 Immediately after the sale the parties made arrangements for the formal transfer of the assets sold to Interstate Finance and Mortgage Company. It was agreed that Mr. Coble should return to Williamsport in a week or ten days and at that time the Lycoming trustees would have a rubber stamp ready with which they could formally endorse the notes and other evidences of indebtedness. There was no conversation at this time regarding any general assignment.
 
 
 13
 On his return to Williamsport Mr. Coble brought with him a general assignment which he asked the liquidating trustees to sign in addition to executing a specific assignment of each note and other evidence of indebtedness. The general assignment, which the trustees thereupon signed, read:
 
 
 14
 'Know All Men By These Presents
 
 
 15
 'That we, Herbert M. Carson, Ira M. Witt. and Peter G. Cameron, Liquidating Trustees of Lycoming Trust Company of Williamsport, Pennsylvania, for a valuable consideration, to us in hand paid by Interstate Finance & Mortgage Company, of Harrisburg, Pennsylvania, before the ensealing and delivery of these presents, the receipt whereof we do hereby acknowledge, have granted, bargained, sold, released and delivered, and by these presents do grant, bargain, sell, release and deliver unto the said Interstate Finance & Mortgage Company, all the right, title and interest of the said Liquidating Trustees in and to all of the remaining unpaid notes, judgments and/or other claims receivable owing to the aforesaid Lycoming Trust Company, as more particularly described, without prejudice to the ownership of the said Interstate Finance & Mortgage Company because of any omissions, in schedule hereto attached and made a part hereof;
 
 
 16
 'To Have and To Hold the said receivables, all and singular, for the use, ownership and behoof of the said Interstate Finance & Mortgage Company, and its assigns, absolutely.
 
 
 17
 'In Witness Whereof, we have hereunto set our hands and seals this 17th day of September, A.D. 1952, at Williamsport, Pa.
 
 
 18
 '(s) Herbert M. Carson (Seal) (s) Ira M. Witt (Seal) (s) Peter G. Cameron (Seal) Liquidating Trustees of Lycoming Trust
 
 
 19
 Company'
 
 
 20
 While the above assignment purports to incorporate a 'schedule hereto attached' no schedule was ever attached or prepared.
 
 
 21
 At the time the general assignment was executed, neither the liquidating trustees, their manager nor their counsel, so far as the evidence shows, gave any consideration to the possibility of recovering anything by virtue of their having been a stockholder in 1936 of Williamsport Wire Rope Company. The notes for which this stock had been held as collateral had all been settled or written off. And while a special master's report had been filed with the district court recommending that the sale of Williamsport's assets be set aside, the manager for the trustees testified that he was completely unaware of this report at the time of the assignment.
 
 
 22
 On October 14, 1952, the district court adopted the report of the special master. 107 F.Supp. 759. That report found that the sale of Williamsport's assets had been accomplished through fraud and that such fraud had had its inception in July, 1936. It recommended not only that the 1937 sale of assets be set aside and that Bethlehem account for the assets and the profits made on the operation of Williamsport since the sale but also that Bethehem restore to the former stockholders of Williamsport whatever stock had been sold by them to Bethlehem after July, 1936. In final settlement Bethlehem Steel Company paid into the district court the sum of $6,000,000 for distribution to the former stockholders of Williamsport Wire Rope Company. By order of December 29, 1952 the matter was referred again to the special master to receive and report one the claims of all persons asserting any interest in the $6,000,000. 107 F.Supp. 762.
 
 
 23
 The Lycoming liquidating trustees and the Interstate Finance and Mortgage Company asserted conflicting claims for approximately $300,000 of the amount deposited. Both the special master and the district court recommended and ruled in favor of the trustees. Interstate appeals from the district court's order.
 
 
 24
 The special master admitted over objection parol evidence to explain the terms of the general asssignment. The matters allowed included proof of all the facts referred to above plus testimony from both sides as to the reasons for the general assignment and what the parties intended by it. Interstate assigns this as error. We think such evidence was admissible for a number of reasons.
 
 
 25
 The writing in question is incomplete on its face since it purports to assign items which are more particularly described in an attached schedule which in point of fact was neither attached nor prepared. Parol evidence is therefore competent to show what items the parties had intended to list on such schedule. 3 Williston, Contracts, Sec. 636 (1936); Restatement, Contracts, Sec. 239 (1932).
 
 
 26
 But even so, appellant contends that the items so shown do not defeat its claim since, according to the terms of the general assignment, the attached list itself would have been 'without prejudice to the ownership of the said Interstate Finance & Mortgage Company because of any omissions * * *.' This argument would be persuasive if the contingent possibility of recovering money as the result of the past ownership of the Williamsport stock were clearly and unambiguously encompassed by the general description of the subject matter assigned. But that is not the situation.
 
 
 27
 The term 'omissions' must necessarily mean omissions from 'all of the remaining unpaid notes, judgments and/or other claims receivable owning to the aforesaid Lycoming Trust Company * * *.' The possibility that Bethlehem would have to return to the former owners all Williamsport stock it had acquired after July, 1936, that the 1937 sale of Williamsport's assets would be set aside for reasons of fraud and that damages would be paid such former stockholders was plainly neither an unpaid note nor a judgment. Was it a claim receivable owing to the Lycoming Trust Company? Does that description include claims that are contingent as well as fixed, unliquidated as well as liquidated? When a suit by others to set aside a sale of assets has not been adjudicated, is a former stockholder's claim that would be based on such setting aside a 'receivable'? Does the term 'owing' mean owing at the time of the assignment or does it include all claims that may become due in the future?
 
 
 28
 From these questions, another purpose for admitting parol evidence is readily apparent-- to explain the ambiguous language 'all * * * other claims receivable owing to the * * * Company.' Restatement, Contracts, Sec. 231 (1932); Albert v. Schenley Auto Sales, 1953, 375 Pa. 512, 100 A.2d 605; Security Trust Co. of Pottstown v. Stapp, 1938, 332 Pa. 9, 13, 1 A.2d 236, 238. In the latter case, the Pennsylvania Supreme Court[1] said:
 
 
 29
 'In our opinion testimony to explain what the parties intended by the words 'any and all loans made by you from this bank' and 'upon your repayment to us of all obligations held by us' is required because of the obvious ambiguity contained in the language used. It is well settled that where a contract is ambiguous, either party may produce evidence to resolve the ambiguity * * *.'
 
 
 30
 Even apart from any ambiguity, parol evidence is always admissible to show the circumstances accompanying a transaction. Restatement, Contracts, Sec. 235(a) and (d) (1932). Here the advertisement, the list at the sheriff's office, the specific rubber stamp endorsements, and the small consideration are all circumstances from which a reasonable person would deduce that the parties had no intention of including in any manner the valuable and previously unmentioned windfall that might result from the class suit against the Bethlehem Steel Company. See Restatement, Contracts, sec. 230, Illustration 1 (1932); Frederick Investment Co. v. American Surety Co., 1933, 314 Pa. 1, 169 A. 155, 156;[2] Markides v. soffer, 1952, 172 Pa.Super. 215, 93 A.2d 99; Rothstein, to Use of H. Rothstein & Sons v. Jefferson Ice Mfg. Co., 1939, 137 Pa.Super. 298, 9 A.8d 149.
 
 
 31
 Throughout the transaction, both parties dealt with each other with a specific group of debts and claims in mind. The items in this group were listed at the sheriff's office and were the subjects of specific individual assignments. A schedule of these items was referred to in the advertisements and in the general assignment. If the parties were both mistaken as to what remaining claims were in fact owing to the Lycoming Trust Company[3] or if they were both mistaken as to the technical meaning of the terms of the general assignment, it is the type of mutual mistake for which a court should admit parol evidence in order to establish the real contract of the parties. Restatement, Contracts, Sec. 238 (1938); see Barnhart v. Riddle, 1857, 29 Pa. 92; Kast, to Use of Rate Consulting Corporation of America v. Jackson & Moyer, 1942, 150 Pa.Super. 171, 27 A.2d 662; Rouseville, Borough School Dist. v. Cornplanter Tp. School Dist., 1905, 29 Pa.Super. 214.
 
 
 32
 Parol evidence is also admissible to establish the failure of consideration. Restatement, Contracts, Sec. 238, Illustration 2 (1938). Here the appellant had already agreed to pay $30 for the assignment and transfer of the items on the list in the sheriff's office. The sale was completed on September 17, 1952.
 
 
 33
 'A sale by auction is complete when the auctioneer announces its completion by the fall of the hammer, or in other customary manner.' Pa.Stat.Ann. tit. 69, § 161 (1931).[4]
 
 
 34
 Only afterward, possibly more than ten days afterward, was the idea of a general assignment put forth by appellant[5] as something it wanted in addition to the rubber stamp endorsements. Since $30 constituted the consideration only for the items on the list referred to in the advertisement, the general assignment, if it did attempt to give appellant more than what was on the list, was without consideration and must accordingly fall.
 
 
 35
 Appellees also suggest that a right to join in an action for unliquidated damages to redress a fraud is not in any event assignable at law. See Marsh v. Western New York & P.R. Co., 1903, 204 Pa. 229, 53 A. 1001; Manganiello v. Lewis, 1936, 122 Pa.Super. 435, 186 A. 218; cf. Traer v. Clews, 1885, 115 U.S. 528, 6 S.Ct. 155, 29 L.Ed. 467. Because of what has already been said, it is unnecessary to go into the merits of this contention but we do note that it is still another reason why the term 'other claims receivable owing' to the company is ambiguous.
 
 
 36
 The special master acted properly in admitting extrinsic evidence to show the true agreement of the parties. His finding that Interstate did not acquire any interest in whatever rights the liquidating trustees had as former stockholders of Williamsport Wire Rope Company either as purchaser at the public sale or as assignee of the general assignment is not against the clear weight of the evidence. The district court's order of November 22, 1954, which adopted the report of the special master, will be affirmed.
 
 
 37
 GOODRICH, Circuit Judge (dissenting).
 
 
 38
 However this case comes out someone is going to receive a substantial windfall which he neither expected nor worked for. My own interpretation of the transaction by which Coble acquired the assorted collection of cats and dogs which it was thought constituted the remaining assets of the defunct Lycoming Trust Company is that Coble bought everything there was left. The consideration was obviously nominal. But no one thought the stuff was worth much. The situation is comparable to that of a man who buys a seemingly barren piece of land for almost nothing and oil is discovered on it later. The buyer wins, of course. I should let him win here.
 
 
 
 [1]
 The Parol Evidence rule is not a rule of evidence, but a rule of substantive law. 9 Wigmore, Sec. 2400 (3rd ed., 1940). Pennsylvania law is therefore clearly applicable in this diversity case. See provident Trust Co. of Philadelphia v. Metropolitan Casualty Ins. Co., 3 Cir., 1945, 152 F.2d 875, certiorari denied 1946, 327 U.S. 789, 66 S.Ct. 810, 90 L.Ed. 1015
 
 
 [2]
 In that case a surety obligated itself to cover losses sustained as the result of embezzlements or thefts "on the part of any of the employees named in the schedule attached * * *". The list included a number of independent 'collectors' who were not employees. Nevertheless, the Pennsylvania Supreme Court said, 314 Pa. at page 5-6, 169 A. at page 157, with regard to one of those collectors:
 'It may well be that Grosvenor was not, properly speaking, an employee of the plaintiff investment company, but under the circumstances that fact does not avoid appellant's liability on the bond.
 In that instrument the parties intended Grosvenor and others, including corporations, to be covered by the generic term 'employee,' and whether that was the proper word to use or not makes no difference, because the intention of the parties to consider all those listed as covered by the bond is apparent.'
 
 
 [3]
 According to the testimony, the trustees were not aware of the suit to set aside the sale and there is no reason to believe that Interstate knew of it. If Interstate actually was aware of that suit and knew that the trustees did not know of it, it would seem to be a fact so vital to the contract as to make non-disclosure fraudulent or unconscionable. See Goldstein Co. v. Joseph J. & Reynold H. Greenberg, Inc., 1945, 352 Pa. 259, 42 A.2d 551; Restatement, Contracts, Sec. 472(1)(b) (1932)
 
 
 [4]
 In effect until July 1, 1954. Approximately the same language now appears in the Uniform Commercial Code. See Pa.Stat.Ann. tit. 12A, Sec. 2-328 (1954)
 
 
 [5]
 If there is more than one reasonable interpretation, the interpretation which operates more strongly against the originator is to be preferred. Restatement, Contracts, Sec. 236(d) (1932); Sanctis Construction, Inc., Arbitration Case, 1945, 158 Pa.Super. 71, 43 A.2d 581