FIDELITY TRUST COMPANY, Plaintiff,

v.

AMERICAN SURETY COMPANY OF NEW YORK,

and

Hartford Accident and Indemnity Company, Defendants.

Civ. A. No. 16959.

United States District Court
W. D. Pennsylvania.
Jan. 21, 1959.

to Re-Ly-On Products Company, each of which was evidenced by a promissory note signed, with a few exceptions, in the company name by Alex L. Josselson, its president. Each loan was secured by a written assignment of accounts receivable signed, with three exceptions, in the company name, by Josselson. Three of the assignments were signed by Clarence Randall, vice president of the company. Each of the accounts receivable was, in turn, evidenced by a duplicate invoice of Re-Ly-On Products Company representing that the company had sold and shipped described goods to a particular purchaser, for which the customer had been billed and payment had not been made. In fact, the accounts receivable were fictitious and the goods listed in the invoices were never ordered by or shipped to the purchaser stated in the invoice. Plaintiff alleges that the assignments and invoices were prepared by or at the instruction of Josselson knowing that they were fictitious and with intent to defraud the plaintiff.

The loans were not repaid by Re-Ly-On Products Company, and they are uncollectible because of the insolvency of this company. Plaintiff gave notice of the loss to defendants as required by the bond, but defendants refused to pay the loss on the ground that it was not covered by the bond.

Plaintiff filed its complaint, alleging that the loss was covered by Paragraph E of the Bankers Blanket Bond which provides, in pertinent part, as follows:

"The Losses Covered By This Bond Are As Follows: [E] Any loss through the insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of or otherwise acted upon any securities, documents, or other written

Weller, Wicks & Wallace, Pittsburgh, Pa., for plaintiff.

J. M. McCandless, Pittsburgh, Pa., for defendants.

SORG, District Judge.

This is an action brought by plaintiff as the insured under a Bankers Blanket Bond issued by defendants as sureties to recover losses sustained by it as the result of a series of loan transactions.

From February 2, 1956 through April 18, 1956, plaintiff made a series of loans

instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity or raised or otherwise altered or lost or stolen * * *

"Mechanically reproduced facsimile signatures are treated the same as handwritten signatures."

Defendants have moved to dismiss the action on the following grounds:

1. The complaint fails to state a claim against defendants upon which relief can be granted.

2. The complaint fails to state a claim which falls within the coverage of paragraph E of the bond sued upon.

The parties have stipulated as follows: "* * * the amount at issue in this action is $43,632.32. The only matter therefore left for decision of the Court in this case is the questions of law raised by the pleadings. (sic) Upon determination of those questions the Court shall enter a final judgment in behalf of the successful party, which judgment shall be immediately appealable."

■■ The invoices in question were represented as duplicate copies of original instruments evidencing accounts receivable. They were false documents the making and use of which were intended to defraud. Within the terms of the bond plaintiff "extended credit on the faith of" or "otherwise acted upon" them.

Admittedly, the signatures on the assignments were genuine and the invoices required no signature. It is therefore concluded that the phrase "forged as to signature" does not apply. The issue thus resolves itself into the question of whether or not the invoices involved may properly be termed "counterfeited" within the meaning of the bond.

"Counterfeit" has been defined in Law Dictionary & Pronunciations by James A. Ballentine, 1948 Edition, as follows:

"Counterfeit—The fabrication of a false image or representation. In its broadest sense, to counterfeit means to make a copy without authority or right and with a view to deceive or defraud by passing the copy as original or genuine. But as ordinarily understood in law, the term is confined to the making and uttering of false money, or the forging of bank notes which are the equivalent of money."

In 1 Bouv.Law Dict., Rawles Third Revision, the following definition of "Counterfeit" is set forth:

"To make something false in the semblance of that which is true. It always implies a fraudulent intent. It refers usually to imitations of coin or paper money."

Webster's New International Dictionary,. Second Edition, 1955, defines "counterfeit" as follows:

"That which is made in imitation of something, with a view to deceive; a forgery; as a counterfeit of a bank note.

"2. That which represents or is. like another thing; a likeness, a portrait; a counterpart; a copy. (Archaic).

"3. (Obs.) a. one who pretends. to be what he is not; an imposter. b. An unnatural or misshapen person. c. a counterfeiter.

"Syn.—Counterfeit, Forgery. Counterfeit is used chiefly of imitations of coin, paper money, or securities depending upon pictorial devices or engraved designs for identity or assurance of genuineness. Forgery is more properly applied to the fraudulent making of a written or printed document; or to a fraudulent imitation of it or change in it."

In view of the specific treatment of "counterfeit" as to currency, government bonds, etc. in clauses (F) and (G) of the contract, the term "counterfeited" as used in clause (E) is interpreted as applicable to "written instruments" other

than currency, etc. Unless, further, it is to be given application in a sense other than "forged as to signature", it must be deemed meaningless and mere surplusage. This Court is of the opinion that the invoices in question were "counterfeited written instruments" according to the meaning of the term as the parties intended to be bound by it in clause (E) of the indemnity bond. To conclude otherwise would be to give no effect whatever to the use of the word "counterfeited". See Metropolitan National Bank of Minneapolis v. National Surety Co., D.C.Minn.1931, 48 F.2d 611; Security National Bank of Durand v. Fidelity & Casualty Company of New York, 7 Cir., 1957, 246 F.2d 582; Fitzgibbons Boiler Co. v. Employers' Liability Assurance Corp., Ltd., 2 Cir., 1939, 105 F.2d 893.

In accordance with the stipulation of counsel, judgment will be entered as on motion for summary judgment, in favor of the plaintiff and against the defendants in the amount of $43,632.32, together with costs.