**FIDELITY TRUST COMPANY**

v.

**AMERICAN SURETY COMPANY OF NEW YORK and HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellants.**

**No. 12874.**

United States Court of Appeals
Third Circuit.

Argued June 1, 1959.

Decided June 23, 1959.

James M. McCandless, Pittsburgh, Pa., for appellants.

J. Murray Egan, Pittsburgh, Pa. (Weller, Wicks & Wallace, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is a suit by the plaintiff bank against two surety companies which had issued to the plaintiff a "Bankers Blanket Bond." The plaintiff won in the district court following a carefully considered opinion by the trial judge. D.C.W.D.Pa. 1959, 174 F.Supp. 630. The surety companies appeal.

The case presents no contested issue of fact. The amount of loss by the plaintiff was agreed upon and the sole question is that of determining the effect of a clause in the bond which will be set out presently.

The plaintiff bank made a series of loans to a concern called Re-Ly-On Products Company. Each loan was evidenced by a promissory note signed by the president or vice-president of the company. Each loan was secured by a written assignment of accounts receivable also signed by the president or vice-president of the company.[1] Each of the accounts receivable was evidenced by a duplicate invoice on the regular form of Re-Ly-On Products Company. The invoice purported to show the sale of goods by Re-Ly-On to a customer. Some of these invoices represented a transaction which had in fact taken place. As to others the purported transaction had not taken place and the bank was left without the security which it would have had if the transaction had been what it was represented to be. The bank having failed to get its money sued the sureties for the loss involved in the fraudulent transactions.

The bond itself contains a great many words and covers a great many subjects. The part we are concerned with is under the heading "The Losses Covered By This Bond Are As Follows:" Paragraph (E) is the one involved.[2] The critical words are: "Any loss * * * on * * * any securities * * * or other written instruments which prove to have been counterfeited or forged as to the signature. * * *" Were these invoices which bore no signature counterfeit?

This is the real question in the case. The plaintiff argues both that they were counterfeit and that the forgery provision is applicable. He cites authority and raises an interesting question. But we are not going to decide the forgery

1. The signatures on the notes and the assignments were genuine.

2. The full wording is as follows:
"(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the Insured's having, in good faith and in the course of business, guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires the Insured, upon any transfers, assignments, bills of sale, powers of attorney, guarantees, endorsements or other documents upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments; *Excluding, However,* any loss through *Forgery or Alteration* of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; and excluding, further, any loss specified in subdivisions (1) and (2) of Insuring Clause (D) as printed in this bond, whether or not any amount of insurance is applicable under this bond to Insuring Clause (D).

"Mechanically reproduced facsimile signatures are treated the same as handwritten signatures."

point because it seems clear to us that the plaintiff's recovery can be bottomed on the provision protecting loss from counterfeiting.

Both sides seem to agree that this is a question of Pennsylvania law. It may be but nothing has been shown us to establish that proposition. The bank is a Pittsburgh bank. The surety companies are corporations of New York and Connecticut respectively. Where the bond was issued we do not know. We gather that the transaction out of which the loss occurred took place in Pennsylvania. So we assume Pennsylvania law governs. Black & Yates, Inc. v. Mahoghany Ass'n, Inc., 3 Cir., 1942, 129 F.2d 227, 233, 148 A.L.R. 841; Mann v. Salsberg, 1901, 17 Pa.Super. 280.

But we have had no citation of any Pennsylvania authority which is helpful on the point involved in the case and must, therefore, fashion our decision from the materials at hand as best we can.

Argument for the surety companies urges the point that the word "or" between the word "counterfeited" and the word "forged" indicates the use of different terms to express the same thing. That means, necessarily, that the word "counterfeited" could just as well be left out for it adds nothing to the term "forged."

■■ We do not think this is the best construction of the instrument. The form was offered as a contract by large professional surety companies who certainly know what they are doing. We cannot think that it has not been very carefully drafted or that the draftsman put in words to mean nothing. Furthermore, this language is that of the promisor who is doing professional business for a consideration. The bond contained in the record is a printed form submitted by the surety company. If there is doubt about the meaning of language under those circumstances, it is not to be resolved in favor of the one who chose the words and as a business transaction issued the bond to another.[3] Its very term "Blanket Bond" indicates that its coverage is to be wide and it is not unfair to interpret the document in this fashion.

The plaintiff's argument provides us with an ingenious diagram to show the type of loss which, under its construction, the bond protects against. It argues as follows:

"Plaintiff is protected against loss from its having acted upon

'written instruments which prove to have been counterfeited

or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity,

or raised

or otherwise altered

or lost

or stolen * * *' "

We think that this is a more apt reading of the language than that shown in the argument of the defendant.

■■ Both sides have referred us to many dictionary definitions of "counterfeit." Dictionary definitions are useful, of course. But in a business transaction we think that the use of the words is to be taken in accordance with common business usage as much as possible. We think that common usage would indicate that counterfeit is something that purports to be something that it is not. And that is just what these spurious invoices were. They looked all right even as to details but they were not what they seemed to be.

The judgment of the district court will be affirmed.

3. See Reid v. Sovereign Camp, W.O.W., 1941, 340 Pa. 400, 17 A.2d 890; Housing Authority of City of Pittsburgh v. Santis Const., Inc., 1945, 158 Pa.Super. 71, 43 A.2d 581. Restatement, Contracts § 236(d) (1932).