**FIRST NATIONAL BANK OF SOUTH CAROLINA OF COLUMBIA, Plaintiff,**

v.

**GLENS FALLS INSURANCE COMPANY, Defendant.**

**No. AC/441.**

United States District Court
E. D. South Carolina,
Columbia Division.

Sept. 12, 1961.

Boyd, Bruton & Lumpkin, W. C. Boyd, Columbia, S. C., for plaintiff.

Francis R. Fant, Anderson, S. C., for defendant.

WYCHE, District Judge (sitting by designation).

This case was tried before me without a jury upon a stipulation of facts, from which it appears that plaintiff bank made a series of loans to Shirtmaster Company, Inc. Each loan was evidenced by a promissory note signed by Joseph Kaplan, Secretary and Treasurer of Shirtmaster. Each loan was secured by a written assignment, incorporated in the note, of accounts receivable. Each of the accounts receivable was evidenced by a duplicate invoice on the regular printed form of Shirtmaster. The invoice purported to show the sale of goods by Shirtmaster to a customer. In this case the customer

was Bud Berman Sportswear, Inc. Previous transactions had taken place under like circumstances and the invoices given to secure the loans were paid. As to the invoices to Bud Berman in this case, the purported transaction had not taken place, in that the goods were not ordered by, sold to, or delivered to Bud Berman, as they purported to represent, and the bank was left without the security which it would have had if the transaction had been what it was represented to be. Due to these fictitious, spurious and fraudulent invoices, the bank has failed to get any of its money because the notes are uncollectible due to the insolvency of Shirtmaster and the bank now seeks to recover under its bankers' blanket bond issued to it by the defendant.

The bond contains a great many conditions and covers a great many subjects. Paragraph (E) is the one involved in this controversy which plaintiff contends covers the loss in question. The applicable words are "any loss * * * on * * any securities * * * or other written instruments which prove to have been counterfeited or forged as to the signature * * *." Thus, the question resolves itself to whether or not these invoices, which bore no signature but which were assigned by an officer of Shirtmaster in writing, were forged or counterfeited, or both.

■ Jurisdiction of the federal court in this case depends upon diversity of citizenship and the substantive rights of the parties are covered by the laws of the State of South Carolina. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ The policy contract was executed and issued in South Carolina and its coverage will be interpreted under the laws of that State.

No South Carolina cases, having to do with the liability under a blanket bond for forgery or counterfeiting have been cited by counsel, nor have I been able to find any, so it becomes my duty to decide what in my opinion the Supreme Court of South Carolina, under established rules of construction on insurance contracts, would do if this case were before it.

■ South Carolina law is well settled that the terms of an insurance contract must be construed in favor of the insured and against the insurer where the words of the policy are ambiguous and capable of more than one reasonable interpretation. Pitts v. Glens Falls Indemnity Co., 222 S.C. 133, 72 S.E.2d 174; Inman et al. v. Life Ins. Co. of Virginia, 223 S.C. 98, 74 S.E.2d 423.

The South Carolina criminal law is helpful in defining "counterfeit". It provides, "whoever shall be convicted * * (b) of uttering or publishing as true any false, forged or counterfeited writing or instrument of writing * * * shall be guilty of forgery * * *." Section 16–351, Code of Laws of South Carolina, 1952. The criminal law thus equates counterfeiting with forgery and includes the kind of conduct which is the basis of this action.

Webster's Twentieth Century Dictionary defines "counterfeit" as follows: "1. Forged; false; fabricated without right; made in imitation of something else with a view to defraud by passing the false copy for genuine or original; as, a *counterfeit* coin; a *counterfeit* deed or bond. 2. Assuming the appearance of something; false; hypocritical; as, a *counterfeit* friend. 3. Having the semblance of; false; not genuine; as, *counterfeit* modesty. Syn: Bogus, deceptive, false, fictitious, forged, fraudulent, mock, sham, spurious." (Italics added.)

There is no question in my mind but that the invoices involved in this case were counterfeit, in that they were wholly fictitious, spurious documents. They were made in imitation of something else with a view to defraud by passing the false instrument for a genuine instrument. In other words, the invoices purported to be something they were not. They were not what they seemed to be.

In this modern day of commercial banking and factoring, the court might take judicial notice of the fact that the assignment of accounts receivable is an

important means of financing industry. In 1958, the total volume through factoring companies alone was over $4,000,000,-000. Moore, "Factoring—A Unique and Important Form of Financing and Service", Volume 14, The Business Lawyer 703,706 (April 1959). It is accepted business practice for a manufacturer to bring into a lending agency duplicate invoices and to assign these invoices as security for loans.

In Fidelity Trust Co. v. American Surety Co. of New York, 3 Cir., 1959, 268 F.2d 805, 807, the bank was permitted to recover under the bank's blanket bond on facts identical with the facts in this case. The Court of Appeals affirming the District Court held that the invoices were "counterfeited" and the loss was covered by the bond, and said: "We think that common usage would indicate that counterfeit is something that purports to be something that it is not. And that is just what these spurious invoices were. They looked all right even as to details but they were not what they seemed to be."

Security Nat. Bank of Durand v. Fidelity & Cas. Co. of New York, 7 Cir., 1957, 246 F.2d 582, was decided in favor of the bank under the bank's blanket bond and facts similar to the facts in the instant case.

There are cases which hold to the contrary and defendant has cited State Bank of Poplar Bluff v. Maryland Casualty Co., 8 Cir., 1961, 289 F.2d 544. This case was apparently decided under Missouri law. Other cases were cited which are in conflict but they do not seem to me to take a realistic view of the purposes of the bond in question or of banking practices.

■ It is my opinion that the invoices were "counterfeited" documents within the coverage of the bond and that the plaintiff bank should recover for its loss on account of the assignment to it of the counterfeited documents as security for loans.

By endorsement, the bond provides for $1,000, deductible for any instrument covered by Clause (E). There are five counterfeited invoices, each in excess of $1,000, aggregating in the whole the total amount of $18,675.98. The two notes totaled $17,000, so that the recovery under the bond is limited to $12,000.

It Is, Therefore, Ordered, That plaintiff have judgment against the defendant in the sum of $12,000.